MAMIE F. ROURKE et al., Appellants, v. HOLMES STREET RAILWAY COMPANY et al.

Division One, May 31, 1909.

1. **ELEVATED RAILWAY: Obstruction to Light, Air and Access: Damages.** The owner of real property abutting on a public street has an easement therein of light, air and access by means of said street; and that easement is property of which he cannot be deprived without just compensation. And the owner is entitled to recover all damages done to his abutting property by the interference with those easements by the construction of an elevated railway in the street and the operation of cars thereon.

2. ————: ————: **Prima-Facie Case for Plaintiff.** Evidence that plantiffs are the owners of the property described in the petition; that it abuts on the street in which defendants had constructed and are operating an elevated street railway; that such construction and operation materially deprived the abutting property of light, air and access thereto, to their great damage, makes out a clear case for plaintiffs and the court should submit the issues to the jury.

3. ————: ————: **Measure of Damages: Contradictory Instructions: Construction: Maintenance and Operation.** Plaintiffs' instructions told the jury that the measure of damages resulting from the construction and operation of an elevated railway in the public street in front of their property, was the difference in the market value of the property "immediately before the construction, maintenance and operation" of the elevated railway "and immediately after the same was constructed and used for street railway purposes"; and defendant's instruction told them that "if the market value of the property immediately after the building and operation of the street railway was equal to or greater than it was immediately before said railway was built, then plaintiff cannot recover in this suit." *Held,* that the meaning of the two instructions is substantially the same and they are not in conflict. While plaintiffs' instruction uses the word "maintenance," and defendant's does not, it must be held that the jury understood from both that they were to take into consideration the damage resulting not only from the construction of the elevated structure, but also the damage resulting from the continued operation of cars thereon. If either instruction properly declared the law, both did. But if both were erroneous, plaintiff, having invited the error, cannot complain.

4. ————: ————: ————: **Evidence: Rental Value of Other Property.** It was error to permit a witness in direct examination to testify for defendant that the rental value of certain pieces of his property in the vicinity had increased since the construction and operation of the elevated street railway. Such testimony injects into the case a collateral and immaterial issue, can throw no light on the question of the abutting property-owner's peculiar damages, and is calculated to confuse and mislead the jury.

5. ————: ————: ————: ————: ————: **Waiver: Cross-Examination.** Nor did plaintiff waive the court's error in admitting that testimony by cross-examining the witness about the increase of his rents on his own property; nor can the court's action in admitting it be justified by the fact that previously, when defendant on cross-examination of a witness for plain-

tiffs brought out that character of evidence, plaintiff on redirect examination briefly questioned the witness regarding the matter.

6. ———: ———: ———: ———: Enhanced Value on Other Streets: General Benefits. It was error to admit testimony showing that the construction and operation of the elevated street railway enhanced the value of properties abutting on other streets of the city. The inquiry should be limited to the specific damages and benefits which resulted to the property alleged by the petition to have been damaged; and the general benefits it received in common with other property in the vicinity should not be gone into.

7. ———: ———: ———: ———: Opinion That Property Was Damaged. An expert on real estate values was asked by plaintiff: "In your judgment, did the elevated street railway benefit or damage plaintiff's property" abutting on the street? Answering, he stated that in his judgment it damaged it from $15,000 to $20,000. At the request of defendant the court struck out the answer. *Held*, error. The testimony was competent, material and relevant.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover*, Judge.

REVERSED AND REMANDED.

*Reed, Yates, Mastin & Harvey* for appellants; *Perry S. Rader* of counsel.

(1) The destruction of or interference with the incorporeal hereditaments of light, air and access pertaining to property, by the construction of an elevated railway in a street upon which the property abuts, is the same as damaging the property itself, and under the Constitution the owner is entitled to recover for whatever peculiar damage results to it. Gaus & Sons Mfg. Co. v. Railroad, 113 Mo. 315; DeGoefroy v. Merchants Bridge Terminal Ry. Co., 179 Mo. 698; Story v. Railroad, 90 N. Y. 122; Doane v. Railroad, 165 Ill. 510; Lahr v. Railroad, 104 N. Y. 291. The appropriation of those easements is *pro tanto* an appropriation of the lot itself. Bohm v. Railroad, 129 N. Y.

576. (2) Defendants' instruction 1 is inconsistent with and contradictory of plaintiffs' instructions 1 and 2. Plaintiffs' said instructions cover the whole case, and are a correct statement of the law. Defendants' instruction is incorrect and is not the law. The instructions for both sides directed that the damages, whatever they were, should be estimated as of the date the elevated railway was constructed. In that respect they agree. But they do not agree as to the elements of damages. Plaintiffs' instructions ask for damages caused by the construction and maintenance of the elevated structure, and the operation of cars thereon. Defendants' instruction limits the damage to the erection of the structure. It eliminated the question of maintenance and continued use and future operation of the cars. The evidence shows that the damage is continuous and will be perpetual so long as the cars are run upon the track. Plaintiffs' instruction asked for damages for the continued maintenance of the structure, the operation of cars thereon, and the use of the structure as a street railway; defendants' limited the damages to the erection or construction of the viaduct. The jury could readily have concluded that what the longer verbiage of plaintiffs' instructions meant was the skeleton damages allowed by defendants. The instructions are conflicting, and the giving of defendants' was error. The instructions are conflicting in another respect. Plaintiffs' instructions confined the attention of the jury to peculiar and unusual damages and to peculiar benefits. Defendants' instruction made no distinction between peculiar and general damages, between usual and unusual noises and obstructions, between the damages and benefits that were special to plaintiffs' property and the benefits to all property in the vicinity resulting from the presence of the road in Eighth street. (a) The dam-

221 Sup—4

ages must be estimated as of the date of the taking or appropriation. Railroad v. Knapp-Stout & Co., 160 Mo. 409; Mills on Eminent Domain, sec. 174; Pierce on Railroads, p. 209. (b) The abutting owners on the street have an interest in the nature of property for all time in the streets above their surface and in having them kept open and unobstructed, forever, of which they cannot be deprived without just compensation. Haywood v. Mayor, Etc., 3 Seld. (7 N. Y.) 325; Livingston v. Mayor, Etc., 8 Wend. 99; Doyle v. Railroad, 113 Mo. 286; Van Hoozier v. Railroad, 70 Mo. 148; Powers v. Railroad, 157 N. Y. 108. (c) "The injury" resulting to an abutting property-owner from the construction of an elevated railway in front of his property is "a continuing and permanent one, and therefore a single recovery can be had for the whole damages, present and future." Doane v. Railroad, 165 Ill. 524; Railroad v. Loeb, 118 Ill. 203; Railroad v. Knapp-Stout Co., 160 Mo. 410; Railroad v. Shoemaker, 160 Mo. 428. In Jamieson v. Railroad, 147 N. Y. 325, it is said that "the wrong done is in the nature of a continuing trespass." (d) Operation and use: Sperb v. Railroad, 137 N. Y. 159; Hynes v. Railroad, 66 N. Y. Supp. 511; Railroad v. Springer, 171 Ill. 179. (e) Maintenance: Emigrant Miss. Com. v. Railroad, 165 N. Y. 604, 20 App. Div. N. Y. 596. (f) Noise: Kane v. Railroad, 125 N. Y. 186; Sperb v. Railroad, 137 N. Y. 161; Retor, Etc., v. Railroad, 47 N. Y. Supp. 419. (3) The testimony of W. C. Scarritt was incompetent and should have been excluded on plaintiffs' objection. No witness is competent to testify in direct examination as to specific increases of rents on his own property or any other property in the vicinity. Jamieson v. Railroad, 147 N. Y. 325; Douglas v. Railroad, 43 N. Y. Supp. 847; Robinson v. Railroad, 175 N. Y. 222; Railroad v. White, 166 Ill. 375. In Railroad v. Union Stock Yards, 120 Mo. 551, that being a condemnation case, it is said that wit-

nesses, "qualified from experience, should not have been permitted to state facts connected with their own business." Nor did plaintiffs waive the error of the admission of this evidence by cross-examining the witness on the same subject. Douglas v. Railroad, 43 N. Y. Supp. 848; Railroad v. Walsh, 197 Mo. 412. (4) The court erred in permitting defendants to inquire as to the enhancement of property along other streets from the construction of surface railways therein. The inquiry should have been confined, by way of comparison, to changes in values resulting from the construction and operation of elevated railways. Fries v. Railroad, 169 N. Y. 281; Railroad v. Walsh, 197 Mo. 401. (5) The court erred in striking out the testimony of Guignon to the effect that the viaduct helped the property in general in the neighborhood, but damaged the particular property in suit. That was a perfectly competent reply to the question, "In your judgment did the viaduct benefit or damage that property?" and there was no objection to the question. By striking it out the court indicated to the jury that they were not to consider any damage to the particular property. (6) In any event, plaintiffs were entitled to nominal damages for the appropriation of his easements. Bohm v. Railroad, 129 N. Y. 576; Lambert v. Drug Co., 119 Mo. App. 693. There was an actual appropriation by defendants of plaintiffs' easements of air, light and access. It has universally been held in this state that where private property is actually appropriated the owner is entitled to recover for the value of the property taken. Railroad v. George, 145 Mo. 47.

*John H. Lucas* and *Ben T. Hardin* for respondents.

(1) The construction of a street railway under the authority given by the municipality in whose

streets such railway is constructed, is not a use of the street for which the owner of the abutting property may recover damages; and even the interference with the easements of light, air, ingress and egress, will not permit the owner to recover damages therefor, unless the property is thereby depreciated in value. This viaduct was constructed, and the street car line thereover maintained and operated under and by virtue of the ordinances of Kansas City, read in evidence by appellants, duly authorizing such construction and operation; such ordinances were duly enacted by the law-making power of the city, having full power and authority so to do, under its charter, a public law of this State; and all elements of fancied damages which necessarily flow from the careful operation of the street railroad in conformity to the powers so given, are not damages within the meaning of Sec. 21, Art. 2, of the Constitution. Siebert v. Railroad, 188 Mo. 657; Placke v. Railroad, 140 Mo. 634; Brown v. Railroad, 137 Mo. 529; Gaus Mfg. Co. v. Railroad, 113 Mo. 308; Vandevere v. Kansas City, 107 Mo. 83; Ransom v. Railroad, 104 Mo. 375; Smith v. Railroad, 98 Mo. 28; Railroad v. Railroad, 97 Mo. 469; Julia Building Assn. v. Bell Tel. Co., 88 Mo. 273; Cross v. Railroad, 77 Mo. 318; Randall v. Railroad, 65 Mo. 325; Porter v. Railroad, 33 Mo. 128; Lackland v. Railroad, 31 Mo. 180; Morie v. Railroad, 116 Mo. App. 12. (2) Appellants are in error in their contention that the instructions given for the respective parties are in conflict. Appellants' instruction tells the jury, if they find for plaintiffs, that the measure of damages is "the difference between the market value of the property immediately before the construction, maintenance and operation of the viaduct in question and immediately after the same was constructed and used for street railway purposes." Respondents' instruction tells the jury that "if the market value of the property in controversy immediately after the building and operation of

the street railway and viaduct was equal to or greater than it was immediately before said railway and viaduct was built," then plaintiffs cannot recover. Appellants claim that the instructions are in conflict, in that plaintiffs' instructions ask for damages caused by "the construction and maintenance of the structure and operation of cars thereon," while defendants' instruction "limits the damage to the erection of the structure." There can be no such construction put upon defendants' instruction. It expressly tells the jury that the valuation is to be placed upon the property "immediately after the building and operation of the street railway and viaduct." True, it does not say "the operation of cars thereon;" but how could the street railway be operated without "cars thereon?" A juror is supposed to know that; and it will require the doing of great violence to language, amounting to torture, to construe the two instructions together and draw any conclusion other than that they mean one and the same thing, and are based upon the theory which appellants adopted in the beginning of the trial, and upon which the cause proceeded throughout the entire trial. Upon the theory thus adopted and proceeded with, the appellants must stand in this court. Kilpatrick v. Wiley, 197 Mo. 171; Chinn v. Naylor, 182 Mo. 583; Hall v. Goodnight, 138 Mo. 589; Walker v. Owen, 79 Mo. 583. And if respondents' instruction is not the law, the appellants are not in shape to complain here, because their instruction was of the same kind. Smart v. Kansas City, 208 Mo. 204; Christian v. Ins. Co., 143 Mo. 460; Reilly v. Railroad, 94 Mo. 600; Thorp v. Railroad, 89 Mo. 650; Holmes v. Braidwood, 82 Mo. 610; Smith v. Culligan, 74 Mo. 388; McGonigle v. Dougherty, 71 Mo. 259.

(3) There was no error in allowing the testimony of W. C. Scarritt, and other testimony of like import, on behalf of respondents, as to the value of property other than appellants', in the immediate vicinity thereof, in

view of the fact that appellants opened up that question in making their case, and inquired as to the sale of property there and as far away therefrom as two blocks. (4) There was no error in striking out the testimony of witness Guignon.

WOODSON, J.—The plaintiffs instituted this suit in the circuit court of Jackson county to recover damages, alleged to have been done to their property, located in Kansas City, caused by the construction and operation of an elevated street railway in front thereof by defendants, and thereby obstructing the light and air, and the ingress and egress to and from said property. The amount of damages claimed was $35,000. The answers were general denials.

A trial was had before the court and a jury, which resulted in a verdict and judgment for defendants; and in due time and in proper manner plaintiffs appealed the case to this court.

As the sufficiency of the pleadings are not challenged, it will be useless to incumber this statement by giving them space herein.

The facts of the case are practically undisputed, except as regards the question of damages, and they are stated substantially, in brief of counsel for appellant, as follows:

Plaintiffs were husband and wife, and she is the owner of Lot 40 in Ross & Scarritt's Addition to Kansas City, Missouri, which is situated at the northeast corner of Main and East Eighth streets. The lot is known by its street number as No. 727 Main street, and fronts twenty-four feet on that street, and runs back on East Eighth to the alley between Main and Walnut streets. On the west end of the lot is a substantial three-story and basement brick building which runs back east on Eighth street 72½ feet. East of this building is a two-story brick building fronting on Eighth street, forty-two feet wide and twenty-four

feet deep, and east of that a one-story brick building, also fronting on Eighth street. Running along south of all these buildings, on the north side of Eighth street, there was a sidewalk 10½ feet wide prior to the construction of the viaduct or elevated railway in 1899. The first floor of the three-story brick building in front is on a level with Main street, and on the south are three windows to give light to the first-floor room, and six windows to give light to the second-floor room. There is a door or entrance way just at the corner of Main and Eighth, and there is also a door further east on Eighth street to the first-floor room.

Eighth street is sixty feet wide from building line to building line. By an ordinance approved March 4, 1899, and accepted March 8, 1899, Kansas City authorized the Holmes Street Railway Company, its successors and assigns, to construct, maintain and operate, for a period of twenty-five years, in said Eighth street, a double-track elevated railway, whose motive power was to be "an endless cable or electricity or either of said motive powers." By section 13 the railway in the vicinity of plaintiff's property was to be "constructed upon a substantial and safe steel viaduct," elevated above the surface of the street, and was not to "exceed a width of eighteen feet in extreme dimensions, except where stairways and stations are maintained. One stairway at each of the four corners shall be erected and maintained at Eighth and Main streets so as to afford at said place convenient passage between the cars used on said viaduct and the streets below." The stock of the Holmes Street Railway Company was owned by the Metropolitan Street Railway Company, and the latter company operated the railway.

In this Eighth street the defendants, between March 8, 1899, and July, 1900, constructed an elevated railroad. There is a steep up-grade between Walnut street and Main street, Walnut being the next parallel

street east of Main. The viaduct begins at the surface on the west line of Walnut street, and its elevation increases as it approaches plaintiff's property. Opposite plaintiffs' property, at the alley, the under-side of the structure is $6\frac{1}{2}$ feet above the surface of Eighth street. Opposite the northeast corner of Main and Eighth streets, the under-side of the structure is 13.3 feet above the level of Eighth street. From the underside or bottom of the structure to "the landing" or level above, is four feet, so that "the landing" opposite the northeast corner is 17.3 feet above the level of the street. Above the landing there is a steel guard and "a shelter" with a cover over its top, "a shelter on the station.'"

The viaduct is eighteen feet wide in its usual construction. On its north side opposite plaintiffs' property there is a stairway, which extends out north, that widens the whole structure for a length of 29.2 feet east from Main street. This stairway takes up $5\frac{1}{2}$ feet of the sidewalk, so that it comes up within five feet of the building, leaving a passageway only five feet wide from the southwest corner of the building along Eighth street for a distance of 29.2 feet. This stairway is the same width above and below, so that its landing above comes within five feet of the building. The viaduct covers the first-story windows, or is higher than they are, and the top or shelter of the stairway extends as high up as the windows of the third story. The stairway takes up half the sidewalk between the building and the curb. The viaduct shuts off the view of the building from the south, so that when approached from the south it can scarcely be seen, and that fact renders it unfit for display or advertising of any kind.

On this elevated structure defendants run seventy-one cars per hour during the day time, and average fifty-three per hour for the whole twenty-four hours, and sometimes there are even more than seventy-one

per hour. The cars come within twelve feet of the building. The windows of the second story are on a level with persons in the cars, and the blinds or shades of those windows must be kept constantly drawn to prevent passengers on the cars and on the stairway from looking into the rooms, which are living rooms.

Prior to the construction of the elevated railway, it was not necessary to use artificial light to give sufficient light to the room on the first floor of the building that comes up to Main street. It was then ''a very bright room.'' Since then it has been necessary to keep an arc electric light going in the room day and night at all seasons of the year. The passing of the cars blinds those within the room; when a car passes, ''it gets dark for a second, and when it passes and the sunshine comes out again it is like coming from the dark into the light.''

The viaduct where it crosses Main street has plates of steel or sheet iron on the under-side, which makes it a kind of sounding board as cars pass. All the witnesses testified that the cars make a great and unusual noise—far more than ordinary surface cars.

''It is one continual rumble—that is all there is to it—you can hardly understand each other sometimes.'' ''Standing in the lobby of the restaurant or saloon you can hardly hear a person talk.'' The ground floor of the building at the corner of Main and Eighth streets is used for a saloon, and connected with it in the building immediately north is a restaurant.

Prior to the construction of the viaduct there was and is now a single-track surface railway in Main street, and more lines pass over that line than did formerly. Since the elevated railway was constructed there has been a settling in the west building. The walk from the curb to the building has settled down at least an inch, and the doors are settling down at the bottom and have to be trimmed off at the bottom

about · once a year. The movement of the cars can be felt in any part of the building. Whether one is in the basement or on the first floor he "can feel the car going by 'without taking into consideration hearing them."

Plaintiffs' evidence tended to prove that the special and peculiar damages done and would be done to this property by the erection, maintenance and operation of this elevated road from the time it was constructed, less whatever peculiar benefits it had received in consequence thereof, was from $15,000 to $20,000, while that of defendants tended to show said property was not only not damaged but that it was in fact benefited from $10,000 to $20,000 thereby.

Plaintiffs objected to the rulings of the court regarding the admission and striking out of certain testimony, which will receive special attention in the course of the opinion.

At the request of plaintiffs the court gave the following instructions:

"1. The court instructs the jury that the plaintiffs as the owners of Lot forty (40) in Ross and Scarritt's Addition to Kansas City, Missouri, known as No. 727 Main street, and Nos. 6, 8, 10, 12 and 12 1-2 East Eighth street in said city, were at the time of the construction of the viaduct in question along Eighth street and across Main street adjoining the said property, seized of an easement in such streets of air, light and access to and from said property by said streets, and were entitled to have the use of the same free from unusual noise, and that the plaintiffs cannot be deprived of such rights without just compensation.

"That the construction and maintenance on such streets of an elevated structure or viaduct and the use of the same for street railway purposes constitute a new and additional servitude on the land upon which the street is constructed, and that the city of Kansas

City, Missouri, had no authority in law to grant the power to the defendants to so use said streets as to destroy or unreasonably interfere with the right of the plaintiffs to access to or egress from their said property, or to so deprive them of such easement of light and air from the said streets.

"If, therefore, the jury find and believe from the evidence that the construction, operation and maintenance of the said viaduct or elevated superstructure for street railway purposes by the defendants along and adjacent to the plaintiffs' said property has impaired the use of said streets for the ordinary purposes of a public street or highway, and that unusual obstructions of light, air, access to and egress from the said premises of the plaintiffs and unusual noises from the operation of said street railway company have resulted therefrom, then the finding and verdict in this case must be for the plaintiffs.

"2.  The court instructs the jury that if they find for the plaintiffs under the other instructions in this case, then the measure of plaintiffs' damages will be the difference between the market value of the plaintiffs' property, known as No. 727 Market street, and Nos. 6, 8, 10, 12, and 12 1-2 East Eighth street, immediately before the construction, maintenance and operation of the viaduct in question and immediately after the same was constructed and used for street railway purposes, and in such event the jury should return a verdict in favor of plaintiffs for such sum as they may find and believe from all the evidence in the case will reasonably compensate the plaintiffs for such injury or injuries, if any, to the said property of the plaintiffs referred to in the other instructions in the case."

The defendants asked and the court, over the objections of plaintiffs, gave to the jury the following instructions, to-wit:

"1. If you believe and find from the evidence in this case that the market value of the property in controversy immediately after the building and operation of the street railway and viaduct in Eighth street, was equal to or greater than it was immediately before said railway and viaduct was built, then the plaintiffs cannot recover in this suit, and your verdict must be for the defendants.

"2. The court instructs the jury that in this case the burden of proof rests upon the plaintiffs to prove to the satisfaction of the jury by a preponderance of the evidence in the case that they have been damaged by reason of the construction of the railway and viaduct in Eighth street, as claimed by them and alleged in their petition. And by 'a preponderance of the evidence' is meant the greater weight of all credible evidence in the case; if plaintiffs have not greater weight of the credible evidence with them or if the evidence is evenly balanced as to the weight, then in neither of such events can plaintiffs recover in this case, and your verdict must be for defendants."

I. It is no longer an open question in this State that the owner of real property abutting upon a public street in a town or city has an easement therein of light, air, and access to and from his property by means of said street; and that easement is property of which he cannot be deprived without just compensation.

And when an elevated street railway, constructed and operated by permission of such town or city on permanent structures along such public street, interferes with and deprives such owner of his easement of light, air and access to and from his lot and buildings, he is entitled to recover all damages done thereto in consequence of said construction and operation. [DeGeofroy v. Railroad, 179 Mo. 698; Gaus & Sons Mfg. Co. v. Railroad, 113 Mo. l. c. 315, and cases cited;

Story v. Railroad, 90 N. Y. 122; Doane v. Railroad, 165 Ill. 510; Bohm v. Railroad, 129 N. Y. 576.]

The evidence showed plaintiffs were the owners of the property described in the petition; that it abutted on Eighth street, in Kansas City; that the defendants constructed and operated an elevated street railroad along said Eighth street in front of their property, which materially deprived them of light, air and access to and from their said property, to their great damage. That evidence made a clear case for plaintiffs, and the court very properly submitted it to the jury.

II.  Counsel for appellant complain of instructions numbered one and two given by the court for respondents, for the reason assigned—that they are inconsistent with and contradictory to plaintiffs' instructions numbered one and two, also given by the court.

The particular difference between them, as pointed out, regards the elements of damages stated in each.

Appellants' instructions in substance told the jury that the measure of their damages was the difference between the market value of the property immediately before the *construction, maintenance and operation* of the road and immediately after the same was constructed and used for the purposes mentioned. While respondents' instruction, numbered one, substantially told the jury that if the market value of the property immediately after the *building and operation* of the road was equal to or greater than it was immediately before it was built, they could not recover; and instruction numbered two given for respondents told the jury that the burden rested upon appellants to prove they had been damaged by reason of the *construction* of the railroad, before they were entitled to a recovery.

The verbiage of the instructions given for appellants differs from that employed in those given for respondents, but the meanings are substantially the same. In our opinion those given for appellants, as well as those given for respondents, fixed the measure of damages at the difference, if any, between the market value of the property immediately before and immediately after the *construction and operation* of the road. While respondents' instructions do not use the word "maintenance" as appellants' do, yet that omission did not give them a different meaning from that expressed in appellants'; nor could the jury have been misled by that omission, as we must presume they were men of common sense and would know and understand such a road could not be constructed and operated without it was *maintained.*

We, therefore, hold that there was no conflict or inconsistency between the instructions given for appellants and those given for respondents. If the former properly declares the law, then the latter does also; but if the latter does not correctly state the law as applied to this case, then neither does the former. But whether respondents' instructions are correct or incorrect, appellants are in no position to complain, because their instructions fixed the same measure of damages as that fixed by the respondents'. They having invited the error, if error it be, then they cannot complain. [Smart v. Kansas City, 208 Mo. l. c. 204; Christian v. Ins. Co., 143 Mo. 460.]

III. Counsel for appellants next complain of the action of the trial court in permitting Mr. W. C. Scarritt to testify over their objection as to the increase of rentals of his properties, situate on Main street, in the same block as that of appellants, after the construction and operation of the road, for the purpose of tending to show the property in question

has not been damaged by the construction and opera-
tion of the road.

That precise question came before the New York
Court of Appeals in the case of Jamieson v. Railroad,
147 N. Y. 1. c. 325, and Judge FINCH, in speaking for
the unanimous court, used this language: "But I
think, also, that there was error in the admission of
evidence which we cannot disregard.    The plaintiff
sought to prove the evil effect of the road in diminish-
ing values by the process of calling the owners of
property in the vicinity and proving, in each case,
what the particular premises owned by the witnesses
rented for before the road was built and what there-
after.   There were objections and exceptions.   Such
a process is not permissible.   Each piece of evidence
raised a collateral issue (Gouge v. Roberts, 53 N. Y.
619) and left the court to try a dozen issues over as
many separate parcels of property.   We have held
such a mode of proof to be inadmissible.   [Huntington
v. Attrill, 118 N. Y. 365; In re Thompson, 127 N. Y.
463.]   The elevated railroad cases in this court, to
which the plaintiff refers us, give no warrant for such
a mode of proof, but indicate that the general course
and current of values must be shown by persons com-
petent to speak, leaving to a cross-examination any
inquiry into specific instance if such be deemed essen-
tial.   Almost all the evidence of depreciation was of
the erroneous character, and we cannot say that it
may not have worked harm to the defendant."   The
same conclusions were reached in the case of Douglas
v. Railroad, 43 N. Y. Sup. 847.

And in the case of Robinson v. Railroad, 175
N. Y. 221, the same question was again presented to
the New York Court of Appeals, and, after quoting
with approval the language heretofore mentioned in
the case of Jamieson v. Railroad, supra, it adhered to
that ruling.   The same principle was announced by
the Supreme Court of Illinois in the case of Railroad

v. White, 166 Ill. 375. [Railroad v. Union Stock Yards, 120 Mo. 551.]

In our opinion the conclusions reached by those courts in those cases are correct upon both principle and authority; and this testimony should have been excluded, because it injected into the case collateral and immaterial issues which could throw no light whatever upon the question of appellants' damages, and was calculated to confuse and mislead the minds of the jury.

Counsel for respondents undertook to justify the court's action in admitting that evidence by showing that appellants first introduced the same character of testimony in proving their case, and for that reason they should not now be heard to complain. After an inspection of the record, we are of the opinion that counsel for respondents are in error regarding that matter, for the record discloses that they, and not counsel for appellants, first brought out that character of evidence by cross-examination of plaintiffs' witnesses. While it is true, counsel for appellants on redirect examination briefly questioned the same witness, Miller, regarding the matters testified to by him on cross-examination, yet that brief examination, in our judgment, should not have barred his right to object to the further introduction of that class of testimony, for the reason respondents' case was not changed or injured in any manner whatever thereby. [Douglas v. Railroad, supra; Railroad v. Walsh, 197 Mo. 412.]

This question was presented in the case last cited, and the ruling therein was adverse to the contention of respondents.

We, therefore, hold that the court erred in the admission of that testimony.

IV. We are also of the opinion that the court committed reversible error in the admission of testi-

Rourke v. Railroad.

mony showing that the construction and operation of the road enhanced the values of properties abutting upon other streets of the city. The inquiry should have been limited to the specific damages and benefits which resulted to this property in consequence of the construction and operation of this road; and the general benefits it received in common with other property in the vicinity should not have been gone into. It was misleading and confusing to the jury, who presumably took it into consideration in estimating the questions of damages and benfits, as submitted to them by the instructions.

V. The witness, Guignon, an expert upon values of real estate in Kansas City, was asked by counsel for appellants the following question, among others, "In your judgment, did the viaduct benefit or damage that property?" In answer thereto he stated that in his judgment it damaged the property from $15,000 to $20,000. At the request of counsel for respondents the court struck out that and similar answers, to which appellents excepted, and assign that action of the court as error. Clearly, that testimony was competent, material and relevant to the issues on trial, and it should not have been stricken out. That character of testimony has been held admissible so often by this court that it would be a supererogation of labor to cite authorities in support thereof.

For errors before suggested, the judgment is reversed and the cause remanded for a new trial. All concur, except *Valliant, J.* absent.