A. A. THUMMEL, Appellant, v. JOHN T. SURPLUS.

Division One, December 19, 1914.

1. ASSAULT AND BATTERY: Self-defense: Instructions: Error Invited by Complainant. A plaintiff in an assault case who asked and was given instructions submitting the issue of self-defense, will not be heard to contend upon appeal that that issue was wrongfully injected into the trial.

2. ————: ————: ————: Threatening Language: Evidence. Where, in an action for assault and battery, the defendant testified that when he alighted at the plaintiff's gate, after saying he had come to dig potatoes, the plaintiff "stepped right up and said, 'No you won't dig them,'" and that then they both drew back and struck at each other and the plaintiff went down, the trial court did not err in instructing the jury to inquire whether the plaintiff used violent and threatening language toward the defendant, and in an angry and threatening manner and within striking distance drew back his hand to strike him. In judging whether the language was violent and threatening the jury were not confined to the tone of voice in which the words were uttered, but could take into consideration the acts and gestures accompanying it and even its culmination in immediate violence, the real question being whether it gave the defendant reasonable ground to believe, and he did believe, that the plaintiff intended to do him bodily harm.

Appeal from Nodaway Circuit Court.—*Hon. William C. Ellison*, Judge.

AFFIRMED.

*Cook, Cummins & Dawson* for appellant.

(1) The court erred in giving defendant's instruction 1. This instruction is error, for it told the

jury that the "Plaintiff approached the defendant and used violent and threatening language and in an angry and threatening manner," and there was ⊥o evidence that the plaintiff used any violent language or threatening language, or was even angry. Felver v. Railroad, 216 Mo. 195; Dee v. Nachbar, 207 Mo. 680. (2) The court erred in giving defendant's instruction 2. This record shows there was no self-defense in this case. Defendant went upon plaintiff's premises, and, according to his own testimony, voluntarily entered into the difficulty, hence he cannot now avail himself of the plea of self-defense. State v. Walker, 196 Mo. 73; Johnson v. Dailey, 136 Mo. App. 593; State v. Gamble, 119 Mo. 427; Shellabarger v. Morris, 115 Mo. App. 566.

*Shinabarger, Blagg & Ellison* for respondent.

(1) The acts and conduct of the plaintiff when he spoke the words "No, you won't dig them," as testified to by the defendant, clearly indicated that he was angry, and the accompanying gesture when he drew back his arm to strike made them imply a threat. To say the least, if the evidence of the defendant did not fully establish that the plaintiff spoke the words in an angry and threatening manner, it was sufficient to support an inference that they were so spoken. If it did, the defendant was entitled to the benefit of that inference and had the right to have the jury pass upon it under an appropriate instruction—and the form of the instruction is not questioned by appellant. Linderman v. Carmin, 255 Mo. 62. (2) It is hardly consistent for appellant to complain that the issue of self-defense was submitted to the jury when he himself submitted two instructions on the same issue. His instructions 2 and 3 were on the question of self-defense. Railroad v. Kemper, 256 Mo. 279; Lange v. Railroad, 208 Mo. 475; Kinlen v. Met. St. Ry., 216 Mo. 166.

BROWN, C.— Suit for damages from assault and battery committed July 22, 1907. The defense pleaded was *son assault demesne.* The evidence showed that the plaintiff and defendant were both farmers and neighbors living in Nodaway county. In addition to the farm on which he was living the plaintiff had another near by, upon which a woman named Mrs. Jocelyn had been living that summer and had planted a vegetable garden, which contained some potatoes which had attained the esculent age. Mrs. Jocelyn being about to leave this particular field of her activities, Mrs. Surplus, the wife of defendant, negotiated with her for the potatoes, and the week before the trouble, which occurred on Monday, she saw Mr. Thummel, who told her it would be all right for her to buy them, which she did, completing the transaction and paying for them on Saturday. Monday morning she took the notion that she wanted some new potatoes for dinner. Taking a hoe and a sack she got on her horse and rode over to the Thummel farm, a mile away, hitched her horse at the gate, and, with hoe and sack, went into the yard, where Mr. Thummel met her. She told him that she had bought the potatoes on Saturday and had come over to dig some. He told her that he had traded some chickens for them on Friday. The delicate courtesy that may have attended the giving and receiving of all this information does not appear, as Mr. Thummel in his testimony confines himself to an unembellished statement of what he seems to consider the important facts, while Mrs. Surplus did not testify. Mr. Thummel, however, grows more interesting and circumstantial in his relation of the subsequent proceedings. He says Mrs. Surplus went home and that soon afterward Mr. Surplus rode up. He met him at the garden gate and said, "Good morning, Mr. Surplus." The latter did not condescend to answer, but without saying a word got down from his horse, took something from his pocket that he thought was steel or iron,

perhaps a cold chisel or something or other, and struck him over the eye, which knocked him cold the first lick. When he came to, Mr. Beattie and Mr. Antrin, who had been plowing corn in the field near by, had brought some water and were washing his face. He was a sight; "just blood from head to foot." He had nine gashes of different sizes and depth about his head and face, one eye was just about closed, his jaw was hurt, his ribs felt like they were knocked loose from his backbone, the whole hide was knocked off his hand, two teeth were out and another was so badly jarred that he said it was still loose at the trial.

Mr. Surplus's tale of the same occurrence was that his wife came home crying and he got on his horse and went over to get the potatoes. Mr. Thummel met him at the gate. They spoke to each other and Mr. Surplus said he came to get some of the potatoes and asked him why he wouldn't let the woman dig them. Mr. Thummel said that "the old lady owed him and didn't pay him—went off and never paid him the money." Mr. Surplus said he came up after the potatoes and was going to have them—was going to dig them, and got off and took the sack with him. Mr. Thummel stepped right up and said, "No you wouldn't dig them." He then drew back and Mr. Surplus did likewise. They both struck, Mr. Surplus getting in his blow with such force that it knocked Mr. Thummel down. He rose to a sitting posture and Mr. Surplus struck him two or three times more. He declined to swear that he did not kick him, but said he did not think he did. He said he would not have hit Mr. Thummel if the latter had not attempted to strike him first, and that he had nothing in his hands, but used his naked fists.

Mr. Thummel's statement as to the character of his injuries was very much modified by his doctor, while his own character was considerably modified by evidence introduced for that purpose. Mr. Surplus ad-

mitted that after the trouble he had conveyed his farm to a neighbor without consideration to put it beyond the reach of a judgment and that this had afterward been corrected.

As to the details of the difficulty the jury had the testimony of both parties before it. To aid them in its consideration the plaintiff asked the court to give them the following instructions:

"2. The court instructs the jury that if they believe from the evidence that the defendant, on or about the 22nd day of July, 1907, did willfully and wrongfully make an assault upon and beat, strike and bruise the plaintiff, not in a necessary defense of his person, as defined in other instructions, then the jury will find for the plaintiff.

"3. The court instructs the jury that if they shall believe from the evidence that the defendant Surplus provoked and brought on the difficulty with the plaintiff Thummel, then defendant Surplus cannot avail himself of the right of self-defense in order to shield himself from the consequences of beating and assaulting his adversary, no matter how imminent any danger in which he may have found himself during the progress of the fight, and if in this case the jury shall believe from the evidence that the defendant Surplus prepared himself previous to his assault on the plaintiff and brought on the fight in order to wreak his malice, or satisfy any private vengeance upon the plaintiff, then there was no self-defense in this case."

The court gave number two as asked, and modified number three by inserting, after the word Thummel, the words "with intent to do him some bodily harm," giving it as modified. The other instructions asked and given were not pertinent to this inquiry.

The petition asked for $3000 actual and $5000 punitive damages. The verdict was for the defendant, and from the judgment entered thereon this appeal is taken by the plaintiff.

The appellant insists in substance that error was committed because (1) there was no self-defense in the case, so that that issue ought not to have been submitted to the jury; and (2) that instruction number one given at the instance of the defendant is erroneous because it submits to the jury as a condition of such defense that "plaintiff approached the defendant and used violent and threatening language toward him" when in fact there is no evidence in the record of the use of violent or threatening language by plaintiff and therefore no evidence on which to base the instruction.

I. While we do not wish to be understood as holding that when a party, in submitting his cause to the jury, is driven to a false issue by erroneous instructions given by the court at the instance of his adversary and against his protest, he may not try to have such issue fairly submitted without waiving his right to object to the erroneous action of the court, it is evident that he ought not to be permitted to take advantage of such error when committed at his own invitation. The appellant had, in this case, before the court had spoken upon the subject, asked it in his request for two distinct instructions to submit the question of self-defense to the jury, instead of asking it, as he might have done were his present position well taken, to find for the plaintiff upon the admitted assault and battery, leaving nothing for their determination except the *quantum* of damages. Having invited this issue he cannot now complain that the defendant accepted it, nor that the court submitted it to the jury. [Rourke v. Railroad, 221 Mo. 46, 62; Smart v. Kansas City, 208 Mo. 162, 204; Barr v. Hays, 172 Mo. App. 591, 600 and cases cited.]

*(margin note:)* Assault and Battery: Instructions: Error Invited.

Thummel v. Surplus.

II. The other point made by the appellant is that the court erred in permitting the jury to inquire whether the plaintiff used violent and threatening language toward the defendant, and in an angry and threatening manner and within striking distance drew back his hand to strike him, because there was no evidence of either violent and threatening language or an angry and threatening manner on the part of plaintiff.

**Self-Defense: Threatening Language.**

The testimony was that the plaintiff "stepped right up and he said, 'No, you won't dig them.'" He drew back and struck at plaintiff, who says, in his cross-examination, that the blow hit him, although that fact is immaterial in this connection. The jury had both parties before it, heard them relate the circumstances, and might take into consideration their personal appearance as well as their manner in relating so exciting an episode, to aid them in determining the impression its enactment was calculated to produce on the defendant. In judging whether the language was "violent and threatening" they were not confined to the tone or voice in which the words were uttered but could take into consideration the acts and gestures accompanying it, and even its culmination in immediate violence. The real question was whether it gave the defendant reasonable ground to believe, and he did believe, that in striking him the plaintiff intended to do him bodily harm, or simply to give exuberant expression to his good will toward a neighbor.

We see no error in the record which has not been fully concurred in by the plaintiff and accordingly affirm the judgment. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur.