THE CHICAGO ROCK-ISLAND AND PACIFIC RAILWAY COMPANY, APPELLANT, v. LYDA HOSMAN ET AL., RESPONDENTS.—57 S. W. (2d) 434.

Kansas City Court of Appeals. December 19, 1932.

660

*Luther Burns, Henry·S. Conrad, L. E. Durham, Hale Houts* and *Ilus M. Lee* for appellant.

*Platt Hubbell* for respondents.

CAMPBELL, C.—Plaintiff Railway Company brought condemnation proceeding seeking to obtain right of way across land of defendants in Grundy County for the purpose of constructing and maintaining thereon its double track railroad. The commissioners duly appointed awarded defendants damages in the sum of $1000. Exceptions timely filed by the defendants to the report of the commissioners were tried to the court and a jury, resulting in a verdict and judgment for the defendants in the sum of $2250. The plaintiff has appealed.

The record discloses that the following part of plaintiff's statement is correct, and we therefore adopt it:

"Defendants' land was a farm of 162 acres consisting of two cornering 80's joined by a 5-acre strip. The north 80 abutted upon a public highway on the north, with a residence, barns and other improvements facing on the road. The condemnation involved a change in an existing line of railroad. The old line had been there since 1871 and was a single track on the center of a 100 foot right of way which intersected the north 80 on a straight line running from southeast to northwest with 7.64 acres on the north side. For the purpose

of shortening the line, reducing the curve to the east, the plaintiffs condemned a triangular tract abutting the old right of way on the north and running from the width of 200 feet on the east side of defendants' land to a point at some 900 feet west of the east line of the 80, the total amount of land taken being 1.8 acres.

"Part of the north 80 the improvements, the land condemned and the location of the railroad are shown on the plat attached to the petition and the defendants' plat. The latter plat as well as various photographs of the old and new line introduced by defendants have been filed with the clerk of this court under stipulation of the parties. Plaintiff's improvement included substitution of a double track for the old single track, and the new fill and tracks had been constructed at the time of the trial. When the new tracks were constructed the old rails were taken up and a portion of the old right of way, as indicated in the plats, was abandoned by plaintiff.

"The new right of way line was 130 feet closer to the house and 200 feet closer to the barn than the old right of way. On the east side of the land and south of the barn the defendants had maintained a feed lot for cattle and farther west, a chicken yard. Both the feed lot run to within 40 feet of the old road and the chicken yard ran to the old right of way and both were shortened by the condemnation. When plaintiff took possession and built the new track, it tore up about a quarter of a mile of fences which plaintiff rebuilt at a cost of $75.

"The defendants had operated all the land in one body using the portion north of the railroad for the home and improvements and for feeding cattle. All the portion of the farm which was tilled was on the south, as was the cattle pasture and some feeding of cattle and hogs was done on the south. There was water on both sides, on the south both well water and creek water, prior to the condemnation of the private crossing reached by a fence lane on the north. The plaintiff had provided a new private crossing on the line of the old and replaced the lane with a somewhat wider one, and at the time of the trial had on the ground material for cattle guards which were to be constructed by it.

"It was the claim of the defendants, as disclosed by their exceptions and evidence, that the condemnation and change in the right of way and the substitution of two tracks for one limited the facilities for feed yards for cattle, took away part of the grass run available for the chickens, and made a more inconvenient crossing due to the presence of two tracks rather than one. There was also evidence that the smoke from trains settled about the house and improvements to a greater extent than it would with the old line. By the evidence of the defendants the only ground available for the improvements and for feed lots adjacent to sheds and granaries was on the north side of the railroad. It appeared, however, from defendants' own evidence

that there was available additional higher ground for feed pen for cattle and that by using some lower ground a feed pen as large as the old one could be provided.''

Eleven witnesses, called by the defendants, in giving their testimony, estimated the fair market value of defendants' land prior to the condemnation at $70 to $100 an acre, and several of them placed its reasonable value after the appropriation at $37.50 to $45 an acre.

The plaintiff introduced evidence tending to show that the damage caused by the appropriation was negligible.

Further evidence will be stated in the course of the opinion.

Plaintiff contends that the court erred in permitting defendants' witnesses to testify ''as to the amount that defendants' farm had been damaged by the condemnation.'' In support of the contention it is argued that the testimony was an improper conclusion of the witness and without proper bearing upon the correct measure of compensation. In the case of Rourke v. Railway, 221 Mo. 46, 65, 119 S. W. 1094, the court ruled that that character of evidence was admissible.

Plaintiff argues that the court erred in permitting defendant Lyda Hosman to testify as to the danger from trains at the new private crossing. Plaintiff concedes that it was proper to introduce evidence showing the physical situation, but insists that it was improper for a witness to express an opinion that the crossing was dangerous.

On this subject defendant, Lyda Hosman, testified as follows:

''Q. I don't know whether I understand that, you mean the space between the railroad dump or embankment? A. Between the north rail and the gate.

''Q. Is what, is so short it does what? A. Well the horses' heads are in the gate if you are going north and the hind wheels of the wagon on the track.

''Q. What has that to do with it, what inconvenience is that, if any? I am not a farmer, I wouldn't understand it, tell me why isn't that all right? A. Suppose while you are doing that a train come along going sixty miles an hour, what would happen?

''Q. Well, what is the situation about trains there, tell the jury, to the east? A. Well, they are right there before you can see them.

''Q. Well how close does a train get to you, you mean there is a curve there east of the barn? A. A curve.

''Q. And is there a cut also there? A. Yes, sir.

''Q. You say a train is going sixty miles an hour or any other miles an hour, how far is the train from your barn before you naturally see it as you have looked? A. Well I never measured it, I judge three hundred feet.

''Q. One hundred yards? Well now at what rate of speed, what rates of speed do trains customarily come along on the new main line. A. Sixty miles, and more.

''Q. That's the passenger trains? A. Yes, sir. . . .

"MR. HUBBELL: Q. Well, what is the liklihood or .situation with reference to a man protecting himself from a train· approaching at say fifty or sixty miles an hour from the east on the new main line, when you are on the north side of the new main line going in your feed lot?

"MR. LEE: We object to that question asked in that way, he can state the physical facts and then the jury can determine from that, and from what they will see themselves when they go down there, as to the distances; he said it was 300 feet away, he thought he could see a train 300 feet away.

"THE COURT: Objection overruled, let him answer.

"To which ruling of the court the plaintiff by counsel then and there duly excepted at the time and still excepts.

"MR. HUBBELL: Q. You may state, what is the ability of one to see there and what time one has to get out of the way of a train when he is using the gate on the north side of the main line going in your barn lot?

"MR. LEE: We object to it further invading the province of the jury.

"THE COURT: Objection overruled.

"To which ruling of the court the plaintiff by counsel then and there duly excepted at the time and still excepts.

"MR. HUBBELL: Q. The court says you may answer. A. State your question.

"Q. I said what is in the way, in substance, if anything, of one protecting himself from a train approaching from the east and running west on this new main line where you are going in your barn lot from the right of way, the new right of way? A. Well, you have just to exercise caution.

"Q. Why? A. Because there is always danger.

"Q. And what makes the danger? A. Why, trains and tracks.

"Q. What is it about the tracks that makes the danger? A. The crossing."

The only answer which it could be claimed was the expression of the opinion of the witness as to the danger attending the use of the crossing and to which objection was made was, "well, you have just to exercise caution." It was not proper to receive opinion evidence on the question as to whether or not hazard attended the use of the crossing, but it should not be said that a qualified jury was influenced in its verdict by the expression of a witness to the effect that in travelling upon the crossing it was necessary to exercise caution. Moreover, the evidence was cumulative.

A witness for the defendants testified, without objection, that the crossing "is a pretty dangerous proposition every day in the week."

"Q. Well what do you mean by dangerous proposition? A. By the trains running over there you know the trains are coming from

the east he can't see them until come out from under that bridge and it is just five seconds until one is crossing, a man hasn't any more than time to pick up his hat—no warning at all."

Plaintiff insists that the court erred in giving defendants' Instruction II which reads:

"The court instructs the jury that, under the Constitution of Missouri, private property cannot be taken for public use without just compensation being paid to the owner, and the law of this State gives the owner the right to have such compensation determined by a jury.

"The plaintiff Railway Company has taken certain land mentioned and described in evidence, which land was the property of the defendants Lyda Hosman and Lizzie Hosman and the plaintiff Railway Company has erected a railroad embankment and tracks on the same and has made such use as it desired to make of said land.

"Therefore, your verdict must be for the defendants Lyda Hosman and Lizzie Hosman, and in assessing the just compensation to be paid to them, you should consider all the evidence admitted by the court and all of the instructions given by the court."

The plaintiff says that the first paragraph of the instruction was a mere abstract statement of the law. It would not have been error for the court to refuse to give the first paragraph of the instruction for the reason that it is merely an abstract statement of the law. But, in the circumstances, which will hereafter be more fully discussed, we hold that the giving of the instruction did not constitute reversible error. [Highway Commission v. Hartman, 44 S. W. (2d) 169, 170.]

Defendants' Instruction V reads:

"In connection with the defendants' proceeding instruction numbered IV, the jury may consider the fair market value of the land actually taken and occupied by the embankment and tracks and property of the plaintiff Railway Company; and, if the jury further believe from the evidence that the fair market value of the defendants' farm as a whole, has been reduced in value by the construction of the embankment and railroad tracks and the customary use of the same; and if the jury further believe from the evidence that the extent of such reduction, if any, is shown by the evidence, then such reduction in market value of the whole farm or whole tract may be considered by the jury in connection with the defendants' preceding instruction numbered IV."

The plaintiff argues that the instruction authorized the jury to assess "first, the value of the part taken and also the depreciation in value of the entire farm as distinguished from the depreciation in value of only the remainder, and thereby clearly authorized the double assessment of the value of the portion taken."

This instruction did not direct a verdict. It merely told the jury that certain elements may be considered in connection with another

instruction. This latter instruction is not criticized. Throughout the trial court and counsel time and again correctly stated the rule relating to the measure of damages, and though the instruction is not entirely clear, we do not believe in the circumstances that the jury understood it to say that defendants were entitled to "double assessment of the value of the portion taken."

The plaintiff obtained Instruction D-1 which is as follows:

"The court instructs the jury that the only items of damage defendant Hosman is entitled to recover in this proceeding is as follows:

"(1) The fair market value of the triangular strip of land, described in the evidence as consisting of one and eight-tenths acres, immediately before the appropriation of the same by the railroad company on November 5, 1930.

"(2) The difference between the fair market value of the remainder of the farm, immediately before the appropriation of the one and eight-tenths acres by the railroad company on November 5, 1930, and the fair market value of the remainder of the farm immediately after the taking of the one and eight-tenths acres by the railway company on November 5, 1930."

The instructions read together are not misleading.

Defendants' Instruction VI was the usual instruction on the credibility of the witness. Plaintiff argues that there was no contradictory testimony and hence the instruction was prejudicial. Plaintiff is not in position to assert that the instruction was erroneous for the reason that it obtained the following instruction:

"The court instructs the jury that you are the sole judges of the credibility of the witnesses, and of the weight and value you should give to the testimony of any witness; and in determining what weight and value you will give to the testimony of any witness, you may consider the interest, if any, of such witness, in the result of the trial, his feeling for or against either the plaintiff or the defendant, his manner and demeanor while testifying, and his inclination or disinclination to speak frankly and candidly, concerning the matters about which he undertakes to testify."

The plaintiff evidently thought that the conduct of some of the witnesses was such that the jury should be cautioned as to the weight to be given their testimony. The error, if any, was common to both parties.

It is claimed the verdict is excessive. We do not think so. There was substantial evidence warranting a verdict in a much larger sum.

During the trial of the cause the jury, by agreement of the parties, viewed the premises. We shall assume that each of the jurors was a resident of Grundy County, sober and intelligent, of good reputation, over twenty-one years of age and otherwise qualified. [Section 8746, R. S. Mo. 1929.] Each viewed the premises, had actual knowledge of the situation, and each was able to form his own judgment.

Before viewing the premises the court instructed them as to the elements to be considered in determining the amount of damages. The instruction met the approval of plaintiff.

· The amount of the verdict shows that the jury did not accept the evidence of any witness as to the amount of the damages. It is fair to presume that the jury, having received correct instruction from the court, arrived at the amount of the damages from its own observation. The purpose of the parties in causing the jury to view the premises was to enable it to form its own estimate of the amount of damages. Hence, in the circumstances, though evidence of which complaint is made was improperly received and some of the instructions open to criticism, the judgment should not, for that reason, be reversed. The judgment is affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.