STATE ex rel. KANSAS CITY POWER & LIGHT COMPANY, Respondent,

v.

Wendell KEEN and Roberta Keen, Husband and Wife, Appellants.

No. 47505.

Supreme Court of Missouri,

Division No. 2.

March 14, 1960.

Arthur R. Kincaid, Hale, Coleberd, Kincaid & Waters, Liberty (Johnson & Rawlings, Marshall, of counsel), for appellants.

Ike Skelton, Skelton & Bradley, Lexington, Keith P. Bondurant, Spencer, Fane, Britt & Browne, Kansas City (Bellamy & Bellamy, Marshall, of counsel), for respondent.

BARRETT, Commissioner.

In the establishment and construction of its electric transmission lines from Montrose Station in Henry County to a substation in Jackson County the Kansas City Power & Light Company condemned an easement 150 feet wide and 2,878 feet long (approximately ten acres) diagonally across the 353 acre farm of Wendell and Roberta Keen in Cass County. To carry its 161,000 volt transmission lines across the Keen's stock farm the company has built four structures with four poles in each structure on its easement and the lines are two to three hundred feet to the rear of the Keen's house. Mr. Keen purchased the property near Raymore in 1952 for $63,500 and in the meantime has spent $20,000 on improvements. It was Mr. Keen's opinion that the value of his farm

was $300 an acre immediately before the condemnation of the easement in December 1956 and that the transmission lines had damaged his property $50 an acre even though farm values had increased twenty to twenty-five per cent and his land was now worth $350 to $400 an acre. Upon a change of venue to Saline County and exceptions by both parties to the commissioners' award of $10,500, nine members of the jury awarded the Keens $2,500 damages and they have appealed from the ensuing judgment. Since the appellants seek a new trial upon the only issue involved, the amount of compensation due, and there is evidence in support of their claim of damages in excess of $12,500 jurisdiction of the appeal is properly in this court. State ex rel. State Highway Commission v. Rauscher Chevrolet Co., Mo., 291 S.W.2d 89; City of St. Louis v. Kisling, Mo., 318 S.W.2d 221.

The appellants contend that the trial court erred in instructing the jury and in admitting certain evidence and that for these two reasons they are entitled to a new trial.

■■ When an electric power company condemns an easement or right of way through a tract of privately owned land the measure of damages in general is the difference in value of the land immediately before the taking and its value immediately after the taking. Annotation 124 A.L.R. 407, 408. And so, obviously, instructions for either condemners or condemnees which do not conform to this standard or conflict with it are erroneous. Kamo Electric Cooperative v. Baker, 365 Mo. 814, 287 S.W.2d 858; Arkansas-Missouri Power Co. v. Killian, 225 Mo.App. 454, 40 S.W. 2d 730. If the instructions are not only erroneous but also permit the jury to consider improperly admitted evidence and accordingly award as damages items or matters not recoverable or, vice versa, deny damages for recoverable items under the general rule the aggrieved party is entitled to a new trial. Missouri Power & Light Co. v. Creed, Mo.App., 32 S.W.2d 783.

The appellants contend that instruction P-6 infringes upon the general rule and therefore they are entitled to a new trial.

■ The instruction is short and therefore is set out in full:

"The Court instructs the jury that under the law and the evidence in this case the plaintiff has the right to take and use for the construction and maintenance of its service line, the one hundred fifty foot easement containing approximately 10 acres, extending across the land owned by defendants, and described in the evidence, upon paying to the defendants just compensation therefor, and the only matter for the jury to determine in this case is the just amount of compensation to be paid by plaintiff to defendants for the appropriation and use thereof, as detailed in other instructions herein."

It is said that the instruction does not correctly state the law applicable in condemnation cases in that it limits and instructs the jury that defendants' damages relate only to the ten acres covered by the easement. It is urged that the error in the instruction is apparent when it is noted "that most of plaintiff's witnesses, while purporting to express an opinion as to the damage to the entire tract actually used varying formulas based upon a percentage of the total value of the ten acres in the easement and did not make any allowance for damage to the remaining tract." Therefore it is contended that the instruction had the obvious effect of favoring the plaintiff's trial theory that only damage to the land in the easement should be considered and ignored the defendants' evidence that there was in fact damage to the entire tract.

The witnesses for both parties considered several factors and employed various formulas in arriving at their opinions as to the value of the land before and after the taking, but as the appellants' statement of their position concedes they did in fact finally express their opinions or conclusions "as to the damage to the entire tract."

It will be observed that the instruction does not direct a verdict (Compare State ex rel. State Highway Commission v. Huddleston, Mo.App., 52 S.W.2d 33), or, as we understand, purport to state how the damages are to be measured. On the contrary, as to "just compensation," the jury was specifically directed to "other instructions herein." And in this connection there was a long instruction, D–1, which set forth all the facts in detail, including the plaintiff's right to use the 150 foot easement. This instruction directed a verdict against the plaintiff "for such sum as you may find and believe from the evidence to be the difference, if any, between the reasonable market value (as that term is defined in other instructions) of defendants' said land immediately before the taking by plaintiff of the easement and rights thereon, and the reasonable market value of defendants' said lands immediately after the taking by plaintiff of its easement rights,—that is, the decrease, if any, in the fair, reasonable market value of the *entire tract of land* directly resulting from the taking of said easement rights in said lands." There was an instruction defining "fair market value" and another explaining how that value was to be compensated in damages. Instruction P–6 does not conflict with these instructions and considering the series it is not believed that the jury was confused or misled into believing that they were to assess damages for the ten acres included in the easement only, particularly so when all the evidence related to the value and damages to the "entire tract of land." The instruction may be cautionary or somewhat abstract and it may be that the trial court could have refused to give it, but in the circumstances of this record and the context of all the instructions it did not so infringe upon the general rule as to entitle the appellants to a new trial. State ex rel. State Highway Commission v. Leftwich, Mo.App., 263 S.W.2d 742; Chicago, R. I. & P. Ry. Co. v. Hosman, 227 Mo.App. 659, 57 S.W.2d 434; State ex rel. State Highway Commission of Missouri v. Hartman, 226 Mo.App. 604, 44 S.W.2d 169.

■ The plaintiff's principal place of business is in Kansas City, the defendants reside in Cass County and their farm is in Cass County but by reason of a change of venue the case was tried in Saline County. It is urged therefore that the court erred in permitting the plaintiff's witness, Gray, the company's right-of-way man, to testify that the transmission lines over the defendants' land would be used to furnish electric power in Saline County through the REA, one of the company's customers. It is said that this testimony was immaterial to any issue in the case and that its sole deliberated purpose was "to arouse local prejudices and sympathy of the Saline County jury trying the case." The objectionable reference came about early in Mr. Gray's testimony and in the context of these circumstances:

"Q. Now, Mr. Gray, I want to ask you if you know where the line is that runs from Henry County up to Kansas City, Missouri? A. Yes, sir.

"Q. And have you been along that service line? A. Yes, sir.

\*    \*    \*    \*    \*    \*

"Q. Do you know particularly where it is located on the farm of Mr. and Mrs. Keen? A. Yes, sir.

"Q. And that is in what county? A. It's in Cass County.

"Q. I want to ask you a few questions. First, Mr. Gray, do you know the purpose of the erection and the purpose or the use of this line, that is, the use of the electrical energy that comes over it? A. Yes, sir.

"Q. What is that purpose or use? A. The line was constructed to transmit or carry electrical current to supplement the usage in our area, and also to other power companies, such as the REA, Missouri Public Service, and some municipally-owned power companies, whom we sold to and they distributed it within their areas.

"Q. Being specific, I want to ask you this question, does the electrical energy transmitted over that service line reach Saline County?

"Mr. Kincaid: I object to that as wholly immaterial to any issue in this case. The right of condemnation has already been approved by the Court.

"The Court: He may answer it.

"A. Yes, sir, it does.

"Q. And to whom, if you know; who circulates electrical energy that would come over this line here in Saline County? A. Well, we furnish power to the REA Company in Saline County here; we actually feed them—a substation right south of Marshall here.

"Q. Do you serve any other rural REA company with this line? A. There's another one we tie into right south of Higginsville.

"Q. Is that an REA line also? A. Yes, sir, that's the REA.

"Q. Do you serve any municipalities that you know of? A. Yes, sir, we furnish power to Higginsville and Warrensburg; we wholesale it to them, and they distribute it.

"Q. Do you also sell some power to Independence? A. Yes.

"Q. Is that all on a wholesale basis, where they distribute it through their municipally-owned lines? A. Yes.

"Q. What, if any, companies do you sell electrical energy to wholesale? A. Missouri Public Service Company purchases some current from us."

On cross-examination of this witness the appellants established that the company also operated in Kansas.

It may be assumed that the testimony as to furnishing electricity to Saline County through the REA was immaterial and with-in the exclusionary rules of evidence but the problem here is whether it was manifestly inflammatory or influenced the jury's verdict and it is for that reason the testimony is set out in full. The evidence did not relate to irrelevant or immaterial factors or items for which damages were or were not recoverable and which, nevertheless, the jury may have considered as was the fact in Missouri Power & Light Co. v. Creed, supra. Although immaterial the evidence is not manifestly or patently inflammatory in the sense that the subject matter has a natural tendency to inflame and arouse hostile passions. Hungate v. Hudson, 353 Mo. 944, 947, 185 S.W.2d 646, 648, 157 A.L.R. 598. "Immaterial" or "irrelevant" evidence is excluded, not because it is unjustly inflammatory, but because of its tendency to draw the jury's attention away from the issues it has been called to resolve. Luechtefeld v. Marglous, Mo.App., 151 S.W.2d 710, 713. The appellants excerpt and isolate this particular bit of evidence but in its context it is not manifestly inflammatory and its prejudicial force is not otherwise made to appear and it may not be said that its admission was an error "materially affecting the merits of the action" (V.A.M.S., Sec. 512.160, subd. 2) for which the appellants are entitled as a matter of right to a new trial. Empire District Electric Co. v. Johnston, 241 Mo.App. 759, 767, 268 S.W.2d 78, 83; Prairie Pipe Line Co. v. Shipp, 305 Mo. 663, 673–674, 267 S.W. 647, 650.

Accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, P. J., and EAGER and STORCKMAN, JJ., and JAMES W. BROADDUS, Special Judge, concur.