UNION ELECTRIC COMPANY, a Missouri
Corporation, Respondent,

v.

Vernon PFARR and Cora A. Pfarr,
Appellants.

No. 49777.

Supreme Court of Missouri,

Division No. 1.

Jan. 13, 1964.

Motion for Rehearing or to Transfer
to Court En Banc Denied
Feb. 10, 1964.

1

N. Murry Edwards, St. Louis, Ninian M. Edwards, Clayton, B. Richards Creech, St. Charles, for appellants, Vernon Pfarr and Cora A. Pfarr.

Robert V. Niedner, Niedner, Niedner & Moerschel, St. Charles, for respondent.

HOLLINGSWORTH, Judge.

This is a condemnation proceeding brought and tried in the Circuit Court of St. Charles County by Union Electric Company, a Missouri corporation, under § 523.-010 RSMo 1959, V.A.M.S., to acquire title to a tract of land owned by defendants, Vernon Pfarr and Cora A. Pfarr, husband and wife, in St. Charles County, upon which (with other tracts) it is plaintiff's purpose to erect and maintain an electric power plant. The tract here taken is situate about three miles south and east of Portage Des Sioux, 6 to 7 miles north and west of West Alton and 16 to 17 miles north and east of the City of St. Charles.

Described in the petition by metes and bounds, the tract is said (by defendants) to consist of approximately 120 acres. It is bounded on the south by State Highway 94 which in that vicinity extends in a general east-west direction. Its frontage on Highway 94 is 1500–1510 feet and it extends northward, bounded on the east and west by parallel lines, to the south line of a 76.84 acre tract owned by the Federal Government. The Government-owned tract, bounded on the east and west by a continuation of the same parallel lines that bound defendants' tract, extends northward to the high water mark of the Mississippi River. In addition to the 76.84 acre tract owned by the Government and lying between defendants' land and the Mississippi River, the Government also has a water flowage easement over two parcels of the 120 acre tract owned by defendants: Parcel A, consisting of 10.14 acres, in the east central portion thereof, and Parcel C, consisting of 4.98 acres, in the southeast portion thereof, The Burlington railroad, as it runs through that vicinity, extends in a northwest-south-

east direction, with its nearest point ¾ths to 1 mile to the south of defendants' tract. Several miles to the south of the Burlington railroad is the Missouri River, also coursing in a general northwest-southeast direction.

On April 1, 1961, the trial court appointed commissioners to assess the damages sustained by defendants for the taking of their tract. On the same day the commissioners, by their report duly filed, assessed that damage at $85,000. On April 7, 1961, plaintiff paid into the court registry the sum thus assessed. Both parties filed exceptions. Thereafter defendants disqualified the Judge of the Circuit Court of St. Charles County and the Honorable Elgin T. Fuller, Judge of the Tenth Judicial Circuit, was assigned to sit as a judge in the cause. When the case came on trial before a jury, it was stipulated that the taking of defendants' property was on April 7, 1961. Trial of the issue of damages resulted in a verdict in favor of defendants in the sum of $66,000, and judgment was rendered accordingly. Defendants appealed. At trial defendants contended and here contend that their damages amount to $420,-000. The difference in the amount in dispute vests jurisdiction of this appeal in this court.

Defendants, on appeal, contend that the trial court prejudicially erred in giving plaintiff's Instructions Nos. 1 and 2; in excluding certain evidence offered by defendants, proffer of which was duly made; and in refusing to set aside the verdict and judgment on grounds plaintiff failed to comply with the laws and Constitution of Missouri in that it did not pay into the registry of the court, in addition to the face amount of the commissioners' award, interest thereon from the date of the filing of the award to the date of payment thereof into the court registry. A brief summary of the evidence will suffice for determination of the validity of the errors assigned.

Defendant Vernon Pfarr testified: He and his wife had occupied the tract taken by plaintiff for more than 32 years. Their occupancy from March, 1929, until the end of 1956 had been as tenants of Mrs. Moerschel. Following her death in 1956, defendants agreed to purchase and in 1957 acquired title to the tract from her heirs, for which they paid the sum of $25,000.

Mr. Pfarr further testified: In the year 1940, while occupying the tract as a tenant of Mrs. Moerschel, defendants, in consideration of fees paid to them, began to permit public fishing in the sloughs on the land. In 1942, the number of fishermen became so great that defendants leased the 76.84 acre tract owned by the Government lying between the tract here taken and the Mississippi River, upon which Government-owned tract there is a large slough suitable for public fishing. Continuously from 1942 until the end of 1961, defendants used the waters on both tracts as a public fishing area, for which they have charged fees. During the three years preceding the year 1962, defendants, operating under a lease obtained from the Government, have maintained on the Government-owned tract toilet facilities and a picnic ground; and from 1942 until the end of 1961 they maintained from 25 to 31 boats for use of the fishermen using the waters of both tracts. The only access to the waters on either of these tracts was by way of Highway 94 into defendants' land, thence across that tract to the 76.84 acres owned by the Government. Prior to termination of the lease ending in October, 1961, the Government refused to again lease its tract to defendants, "saying it was going to be taken by Union Electric".

Mr. Pfarr further testified: He had kept records of the income received by defendants from the fishing privileges and recreational grounds on both tracts for public use from 1954 through 1960. He, however, could give no "breakdown" as to the income received on defendants' tract, "because they (the fishermen) would come in the place and fish * * *, I would collect from them * * * and then they would come down on the Government ground and fish and I have no recollection of what it was." Defendants thereupon sought to show that

the annual income from fishing on their property during those years averaged $2,351.95. Plaintiff objected on grounds that these receipts represented the income from *both* properties. Counsel for defendants then admitted: "There is no question about that, your Honor. So my record will be straight, this witness (Mr. Pfarr) in my proffer would testify that these are the incomes from fishing and he could not break it down as to what part was on the slough (on the Government-owned tract) and what part was on the water on his land." The court denied the proffer on the grounds stated in the objection made to it and also on grounds that the entire question of profits was a questionable element in a condemnation suit because profits involve capital expenditures and individual and personal efforts on the part of the property owner.

Mr. Pfarr further testified: The "fair or reasonable market value" of the property owned by defendants on April 7, 1961, which he believed to consist of 120 acres, was $3,500 per acre, a total value of $420,000. That estimate, he said, was based upon "the increase on the Alton Pool, the boating and stuff (on and adjacent to the Mississippi), it calls for club houses and residential that has developed in that area in the last three years, three, four years, make me think, and the people that came in and wanted to buy the place, and the enormous price they offered for it if I would subdivide it, made me think that that was the figures that my place was worth." He also said: "I have never valued my farm as a farm. I have valued my farm as residential, for resort purpose, and as close as it is to harbors and stuff like that."

George B. Funk, a qualified appraiser of the value of lands, testified in behalf of defendants that, after taking into consideration the topography of defendants' land, its proximity to the cities of St. Louis and St. Charles, its proximity to the Mississippi and Missouri Rivers, the Burlington Railroad, Highway 94, and the amount of water available, etc., he deemed its highest and best use

was for industrial purposes and appraised its value for that use at $3,000 per acre. William Huffmaster, a qualified real estate appraiser, also testifying in behalf of defendants, gave it as his opinion that the highest and best use of defendants' tract was for permanent or temporary recreational homesites and that he deemed it to be of the value of $2,500 per acre for that purpose. Sidney Dwiggins, engaged in the real estate business in West Alton, thought the highest and best use of defendants' tract would be for its fishing and recreational purposes and that for such use its value would be $3,000 an acre. Elmer Cope, a real estate dealer, testified that the highest and best use of the land would be for either industrial, commercial or residential purposes; and that its value for either of such uses would be $3,000 per acre.

Counsel for defendants also made the following statement and proffer: "The defendants, Pfarr, desire to offer in evidence portions of the testimony of Mr. Eugene L. Hough, who resides at 11311 Clayton Road, Fontenac. His testimony covers part of the hearing held in the case of Union Electric Company vs. Earnest A. Gibbs, et al. (who owned land adjoining defendants' tract), Cause No. 2152 in the Circuit Court of St. Charles County, Missouri, and this hearing was held on April 27, 1962, before the Hon. James D. Clemens, Judge of said court. Mr. Hough testified, as this transcript shows, that he is the Vice-President and Chief Engineer of Union Electric Company. I desire to offer in evidence portions of the cross-examination of Mr. Hough where he was asked the following questions, and he gave the following answers: 'Question: Now as Chief Engineer the last ten years the Union Electric has constructed the Meramec plant, has it not, in St. Louis County? Answer: Yes. Question: Did you have anything to do with the selecting that site, or passing upon it before it was chosen? Answer: Yes, sir, I did. Question: And was it chosen because it was close to water, the river? Answer: That is one of the factors in connection with

choosing the site, yes. Question: And is that also one of the factors in the choice of this plant here in St. Charles County that you have just described as the Sioux plant? Answer: Yes, sir, that's right, that is one of the factors. Question: What are some of the other factors? Answer: Some of the other factors are the fact that the plant will be reasonably close to the, what we call, the load centers where our heaviest load exists. The site has road access and railroad access. Those are the major factors. Question: There is two railroads, I believe, out there close to it, or run through it, two railroads? Answer: The Burlington railroad runs along one side. Mr. Edwards: That's right. That is the Burlington. The Witness: Yes, I am not familiar with any other railroad just immediately available to the site. Question, by Mr. Edwards: That was one of the factors in selecting this site? Answer: Yes, sir. Question: Oh, is the fact that coal is often transported on the water and the river, does that have anything to do with it? Answer: Well, that is one of the things that is attractive about the site, yes. However, we can bring coal in by rail or water. Question: By railroad or even by truck? Answer: Yes. Question: And that was one of the factors? Answer: Yes.'"

In making the above proffer, counsel for defendants stated: "[I]t is our contention that these statements by Mr. Hough are admissible as admissions against interest by the Union Electric wherein they admit by his very testimony that this site and the location by its access to rail, to water and to road is a good site, we think you can reasonably infer, is a good site for industrial development as our testimony has shown."

Plaintiff's objection to the proffer was sustained on grounds, as succinctly stated by the trial court,: "* * * most of the proffer goes to the question of the value and the items of usefulness as to the condemnor, and takes in area, additional area other than the tract that we are talking about, and much of the proffered testimony would apply only to areas which are used in connection with, but in addition to the tract involved in this case. Further, the usefulness to the condemnor is not a matter which * * * this jury is interested * * *; the sole issue here is the value of this property as of April 7, 1961."

The evidence adduced in behalf of plaintiff tended to show that the site plaintiff was acquiring for its power plant consisted of 996 acres, including defendants' tract, practically all of which 996 acres was of similar topography to that of defendants' tract; and that although its use for public fishing was concededly a factor of some import in fixing its value, nevertheless, the highest, best and predominant use of all of the land in that general area, including defendants' tract, was for agricultural purposes; that it was not susceptible for profitable use as a residential subdivision; and that the fair market value of defendants' entire tract for any use ranges from $33,000 to $40,000.

Instructions Nos. 1 and 2, given in behalf of plaintiff, are:

1. "* * * under the Constitution of Missouri, private property cannot be taken for public use without just compensation being paid to the owner, and the law of this State gives the owner the right to have such compensation determined by a jury. The plaintiff * * * is seeking by this suit to condemn for public use certain land mentioned and described in the evidence, which land is the property of the defendants * * *. Therefore, your verdict must be for said defendants and, in assessing the just compensation to be paid to them, you should consider all the evidence admitted by the Court under the instructions given you by the Court.

"The just compensation to which the defendants are entitled is the fair market value of the defendants' property as of April 7, 1961."

2. "* * * by the term 'fair market value', as used in these instructions, is meant the actual value of the property as of April 7, 1961, that is, the fair value of the property as between one who wants to and is able to purchase, and one who wants to sell and is not obliged to sell; not what could be obtained for the property under peculiar circumstances when greater than its fair market value could be obtained; not its speculative value; not the value obtained through the necessities of another; nor, on the other hand is it to be limited to that price which the property would bring, if forced off at auction under the hammer. In other words, it means the fair market value which could be obtained if the defendants wanted to sell their property upon the market to parties who wanted to buy and would and were able to pay its full value on the usual and ordinary terms of private sale."

Although these instructions have heretofore been challenged on grounds of being abstract in form, they have not been declared prejudicially erroneous. As to No. 1, see: Chicago, R. I. & P. Ry. Co. v. Hosman, 227 Mo.App. 659, 57 S.W.2d 434, 436; State ex rel. State Highway Commission v. Hartman, 226 Mo.App. 604, 44 S.W.2d 169, 170; State ex rel. State Highway Commission v. Stoddard Gin Co., Mo.App., 62 S.W.2d 940; State ex rel. State Highway Commission v. Schutte Investment Co., Mo., 334 S.W.2d 241, 247; State ex rel. State Highway Commission v. Anderson, Mo.App., 367 S.W.2d 809, 812. As to No. 2, see: State ex rel. State Highway Commission v. Farmer's Estate, Mo.App., 68 S.W.2d 721, 724; State ex rel. State Highway Commission v. Lindley, Mo.App., 96 S.W.2d 1065, 1073 [16]; State ex rel. v. Anderson, supra; State ex rel. v. Hartman, supra; and State ex rel. v. Stoddard Gin Company, supra.

Defendants contend Instruction No. 1 is a mere abstract statement of the law; that both Instructions 1 and 2 omit an essential element of defendants' right to recover the fair market value of their property *based upon its highest and best use on the date of the taking* (April 7, 1961); also that inasmuch as there is a conflict between the evidence adduced in behalf of defendants and the evidence adduced in behalf of plaintiff with respect to the fair market value of the land based upon its highest and best uses both 1 and 2 were necessarily prejudicially erroneous; and that as to 2, it was additionally erroneous in that it was in conflict with Instruction No. 4, given at the request of defendants.

It is necessary therefore that, in considering the foregoing contentions, we should here set forth a portion of defendants' Instruction No. 4. The first three paragraphs of No. 4 state in extended detail the substance of the more concisely worded directions given the jury in Nos. 1 and 2. The fourth paragraph of 4 then advises the jury that the meaning of the term "just compensation" to which defendants are entitled, as that term is used in the third paragraph of defendants' 4, is as follows:

*"The just compensation to which said defendants are entitled is the fair market value of the highest and best use of defendants' lands on April 7, 1961.* You may take into consideration in arriving at a verdict for said defendants the location of defendants' land and improvements, the uses and purposes for which the property has been devoted and its adaptability and capability to which, in all reasonable probability, the land could be devoted for uses for which the tract was suitable and adaptable at the time of the taking, having due regard not alone to the community business wants then existing of the locality in which the property is located, but also to such business wants as may reasonably be expected in the immediate future, together with all the surroundings and conditions as shown in evidence in this case." (Emphasis ours.)

■ First, as to defendants' contention that plaintiff's Instruction No. 1 is a mere abstract statement of the law, it should be noted that if it is, then the same vice exists as to the first three paragraphs of defendants' Instruction 4. But more to the point: Assuming that both 1 and the first three paragraphs of 4, in some respects, declare abstract statements of the law, yet they also serve a salutary purpose in defining and delimiting the precise issue to be tried by the jury. No prejudicial error is shown in Instruction 1 on grounds it is a mere abstract statement of the law..

In support of their contention that 1 and 2 are prejudicially erroneous, in that they omit "an essential element" of defendants' right to recover the fair market value of their land based upon its highest and best use, defendants cite City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839. That case does not hold to be prejudicially erroneous an instruction which employs only the all-inclusive term of "fair market value" of the property on the date it was taken as the "just compensation" to which defendants were entitled. Actually, the case holds that an instruction, which specifically declared "highest and best use" to be an element of "fair market value", was proper and therefore not prejudicially erroneous.

■ The evidence in this case consists of more than 300 pages of transcript. There was never any dispute that defendants were entitled to an award of "just compensation" computed upon the basis of the land's highest and best use as of April 7, 1961. Indeed, the greater part of the evidence of both parties was directed to the specific issue of what constituted the highest and best use to which the land could be put as of that date; and Instruction 1 expressly directed the jury that in assessing the just compensation to be awarded defendants they should consider all of the evidence admitted by the court under the instructions given. Therefore, we think it clear that no reasonably intelligent jury could have failed to understand the issues so exhaustively presented. Moreover, the jury was expressly directed under defendants' Instruction 4 that, in ascertaining the fair market value of defendants' land, "the just compensation to which defendants are entitled is the fair market value of the highest and best use of defendants' land on April 7, 1961." These instructions, read together, as of course they must be, are not "misleading, confusing and conflicting" as defendants contend.

■ Defendants' next contention, in substance that the trial court erred in refusing to permit defendants to place in evidence the amount of annual income received from the use of their land for recreational purposes for the years of 1954 through 1960, must also be denied. The record speaks for itself in the conclusion thus reached. Plaintiff neither sought nor took from defendants any right they had to the use of the Government-owned 76.84 acre tract. Even if we were to assume that the income received from the use of both tracts, which admittedly accrued in part from the employment of invested capital over and above the value of land, would tend to shed *some* light upon the adaptability of the land in both tracts for recreational use, yet defendants were unable to allocate to their tract the proportionate part of the total received from both; and, obviously, the jury could not do so. Consequently, the evidence, as proffered, would have tended to mislead rather than to enlighten the jury as to the value of defendants' tract for use as a recreational area.

Defendants' next contention is that the trial court erred in refusing their proffer of the testimony of Eugene L. Hough, vice-president and chief engineer of plaintiff company. That testimony, to the effect that in selecting the 996 acre tract in St. Charles County for the site of its power plant, plaintiff took into consideration its proximity to its "load center" in that area and to railroad, river and high-

way access. The basis upon which defendants contend that such evidence was competent and material is that it amounts to an admission of facts justifying an inference that the highest and best use of the 996 acre tract was its fitness for industrial sites.

█ Assuming that the testimony thus proffered might warrant an inference that other industries having a need for a site such as plaintiff needed would be interested in establishing an industrial site on defendants' tract and thus warrant the further inference that the fair market value of defendants' tract was thereby increased, yet it must also be borne in mind that there was never any question in this case that the proximity of defendants' tract to rail, water and highway accessibility was a factor for consideration by the jury in determining its fair market value based upon its highest and best use on April 7, 1961. The value (and lack of value) of that factor was fully explored and brought before the jury not only by defendants but also by plaintiff. The prejudicial vice of the testimony of Mr. Hough as proffered by defendants is that its true effect would have been to bring before the jury plaintiff's *need* of the particular site in question and thereby place in the foreground the value of the land to plaintiff, based upon plaintiff's need, rather than its right to *acquire defendants' land at its fair market value* as of April 7, 1961, for a power plant site. The concept of the right of eminent domain is not to assess damages for private property taken for public use on the basis of the condemnor's need; rather it is to afford to a lawful condemnor of private property taken for public use the right of condemnation upon payment of just compensation. Article I, § 26, of the V.A.M.S. Constitution of Missouri. "Just compensation" is what the landowner loses by having his property taken, i. e., its "fair market value" when taken. State ex rel. State Highway Commission v. Howald, Mo., 315 S.W.2d 786, 790 [6-8];

29 C.J.S. Eminent Domain § 160, p. 1028. The contention cannot be sustained.

Defendants' fourth and final contention is that the verdict should be set aside because plaintiff did not pay into the court registry interest on the award of $85,000 from the date the award was made, April 1, 1961, to the date it was deposited in court, April 7, 1961. The reasoning upon which that contention is founded, as we understand it, is that because of the failure of plaintiff to pay interest on the award between those dates, title to defendants' property did not become vested in plaintiff and that trial of the exceptions to the award was therefore premature and void under Art. I, § 26, of the Constitution, which provides that "private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be provided by law; and until the same shall be paid to the owner, *or into court* for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested." (Emphasis ours.)

█ The record is clear that plaintiff, in strict accord with one of the alternatives expressly granted it in the above provision, on April 7, 1961, paid into court the full amount ascertained by the commissioners to be just compensation for the taking of defendants' land, $85,000. Under the express provisions of § 523.040 RSMo 1959, V.A.M.S., plaintiff, on April 7, 1961, having fully complied with the provisions of the Constitution, became vested with the lawful right "to hold the interest in the property so appropriated for the uses" for which it had been condemned; and it was so stipulated at the trial. Defendants' contention that this action was prematurely brought and that the verdict and judgment rendered should be set aside is without merit.

We are of the opinion, however, that the judgment herein rendered must be modified to the extent and for the reasons following: That judgment rightly declared that of the $85,000 paid into the court registry by plaintiff, the sum of $66,000, as awarded by the jury, be paid to defendants and that the sum of $19,000 (still remaining in the registry of the court) be paid to plaintiff, but it went further and declared that plaintiff also recover and be paid interest at 6% on said $19,000 from the date of the deposit. Patently, the judgment as rendered would take the amount of interest thus awarded plaintiff from the $66,000 awarded defendants as just compensation for their land.

In its brief filed herein plaintiff, with commendable frankness, concedes that § 523.045 RSMo 1959, V.A.M.S., which defines the extent to which interest may be allowed in a situation such as is here presented, must be read in connection with the recent opinion of this court en banc in the case of State ex rel. State Highway Commission v. Paul, Mo., 368 S.W.2d 419, wherein we construed § 523.045, supra, not to warrant the allowance of interest in a situation such as is presented under the judgment herein awarded plaintiff. Although plaintiff expresses disagreement with the holding of the court in that case, it nevertheless concedes that the decision in the Paul case "may lead to a modification of the judgment in the instant case, with regard to interest."

In this state of the record, we note that defendants, in their original brief, did not challenge the allowance of the interest awarded plaintiff in the judgment, but that they now, in their reply brief, assert that the decision in the Paul case, supra, shows that the allowance of interest on the $19,000 was erroneous. Despite the fact that the challenge now made would ordinarily be disallowed because not timely made, yet for the reasons in Paul stated, to which reference is made, we have concluded that the judgment in the above re-spect constituted plain error, and that the error so clearly violates the constitutional right of defendants to be paid the full amount of the compensation awarded by the jury as to manifest prejudicial injustice to them within the meaning and intent of Civil Rule 79.04, V.A.M.R.

The judgment therefore should be and is modified to delete therefrom the interest allowed plaintiff on the $19,000; and said judgment, so modified, is affirmed.

All concur.