670

PRICILLA TAYLOR MITCHNER and PREITES MITCHNER, Appellants, v. JAMES TAYLOR et al., Appellees. —412 S.W.(2d) 1.

Western Section, November 10, 1965.

Certiorari Denied by Supreme Court, January 3, 1966.

Irving M. Strauch, Memphis, for appellants.

Marvin Posner, Memphis, for appellees.

CARNEY, J. The cross-complainants below, Pricilla Taylor Mitchner and husband, Preites Mitchner, have appealed from a decree of the Chancery Court of Shelby County dismissing their cross-bill seeking to reform a deed to certain real estate located in Memphis, Tennessee. The deed was dated April 5, 1946, and conveyed certain real estate to Jessie Taylor and wife, Pricilla Taylor, their heirs and assigns in fee simple forever. Jessie Taylor and Pricilla Taylor had been living together in Memphis, Tennessee, as man and wife since 1927 without benefit of clergy. They were not married on April 5, 1946, the date of the deed, and did not get married until Decem-

ber 31, 1948. At the time of the execution of the deed on April 5, 1946, Jessie Taylor and his wife, Pricilla, both knew that they were not married but they instructed the attorney to convey the property to them as husband and wife. They told the attorney that they were in fact married.

On June 22, 1960, Jessie Taylor died and his wife, Pricilla Taylor, took possession of the property, exercised ownership over it, and expended sums of money on the property. No one questioned her ownership through any legal proceedings until the present suit was filed in May, 1964. On or about September 13, 1963, Pricilla Taylor and Preites Mitchner were married. He conveyed property which he owned to himself and Pricilla Taylor as tenants by the entirety and Pricilla Taylor in turn conveyed the property which she and Jessie Taylor had purchased to herself and Preites Mitchner as tenants by the entirety.

The appellees, James Taylor, Eddie Lou Blanton, and Willie Ada Clark, as the surviving children of Jessie Taylor by his first wife, Lora E. Taylor, who died in August, 1934, filed their original bill against the defendant, Pricilla Taylor Mitchner, and her second husband, Preites Mitchner, averring that the real estate was owned by Pricilla Mitchner and Jessie Taylor as equal tenants in common with no right of survivorship and that therefore they inherited his undivided one-half interest in said real estate subject only to the marital rights of the defendant, Pricilla Taylor Mitchner, in Jessie Taylor's one-half interest. The real estate consisted of a stone building with three attached apartments which could not be partitioned in kind and the original bill sought a sale for division as well as an accounting for rents. The defend-

ants, Pricilla Taylor Mitchner and her new husband, Preites Mitchner, filed answer and a cross-bill in which they admitted that on April 5, 1946, Jessie Taylor and Pricilla Taylor were not legally married but averred that it was their intention to purchase the property as tenants by the entirety with right of survivorship. The cross-bill concludes with the following paragraph:

"WHEREFORE, these cross-complainants charge that there has been a mistake and there should be a reformation, based on the equitable maxim that equity regards that as done which ought to have been done, and this Honorable Court should reform said instrument and substitute therefor the Original instrument so as to accomplish the true intention of the parties. That their rights be determined exclusively by the instrument as so reformed, so as to create a tenancy by the entirety in said instrument which attempted to convey to them said property on April 5, 1946."

Paragraph 3 of the prayer is as follows:

"3. That at the hearing of this cause, the Court reform the Deed set out in the Original Bill, recorded in Book 1904, Page 663, to conform to the true intention of the parties so as to create a tenancy by the entirety between the grantees in said Deed, namely: Jessie Taylor and Pricilla Taylor, in accordance with the intention of the parties."

His Honor the Chancellor sustained the original bill, dismissed the cross-bill, ordered the property sold for division and ordered a reference to the Clerk & Master: (1) To determine the expenses incurred by Pricilla Taylor Mitchner for the maintenance and preservation of the real estate since the death of Jessie Taylor; (2) to determine the amount of income received by her since his

death; and (3) to determine the value of the dower interest of Pricilla Taylor Mitchner in the one-half interest owned by Jessie Taylor in said real estate at the time of his death.

The cross-complainants have filed three assignments of error: No. I insists that His Honor the Chancellor was in error in refusing to reform the deed so as to create a tenancy by the entirety. No. II insists that the complainants were guilty of laches or unreasonable delay in bringing their suit. No. III insists that the Chancellor was in error in failing to hold that since Jessie Taylor would have been estopped to deny that he purchased the property with the defendant, Pricilla Taylor, as husband and wife and therefore created a tenancy by entirety that likewise his children, the original complainants, would also be estopped from denying this position.

The appellants rely very strongly upon the case of Alexander v. Shapard, 1921, 146 Tenn. 90, 240 S.W. 287. In that case the husband, John T. Alexander, brought suit against the heirs of his deceased wife seeking to reform a deed conveying certain real estate. The deed was dated Nov. 15, 1917, and conveyed the real estate described therein to "John T. Alexander and wife, Mildred Shapard Alexander, their heirs and assigns forever." The grantor, W. E. Gant, an attorney, was of opinion that the deed as written did create an estate by the entirety. Mr. and Mrs. Alexander both understood that the deed as written vested title in them as tenants by the entirety. Mrs. Alexander's personal attorney whom she consulted before the deed was actually drawn also advised her that the effect of a deed to her and her husband would be to create an estate by the entirety and that the survivor would own the property in fee simple.

In 1918 the Tennessee Supreme Court announced its ruling in the case of Gill v. McKinney, 140 Tenn. 549, 205 S.W. 416, in which it held that estates by the entirety were abolished by the woman's emancipation act of 1913 oftentimes referred to as "the Bejach law." In a lengthy opinion by the Honorable L. D. Smith, Special Justice, our Tennessee Supreme Court in Alexander v. Shapard held that a proper case for reformation of the deed was made out. The deed was reformed so as to create an estate by the entirety with right of survivorship in the husband on the death of the wife. By Chapter 126 of the Public Acts of 1919, now T.C.A. Section 36-602, the Tennessee Legislature re-established tenancies by entirety and the right of the husband's courtesy consummate.

In the case of McKee v. Bevins, 1917, 138 Tenn. 249, 197 S.W. 563, our Tennessee Supreme Court held that where a deed was made to one B. B. Bevins and his wife, Elizabeth Bevins, to certain real estate they received and owned the property only as tenants in common and not as tenants by the entirety even though B. B. Bevins and Elizabeth had gone through a marriage ceremony in 1887 and had lived together continuously until June, 1914, when Elizabeth died. The deed had been executed on October 28, 1913, which was prior to the effective date of "the Bejach law" or first woman's emancipation act of 1913. At the time Bevins went through the marriage ceremony with Elizabeth he was married to the defendant, Mary A. Bevins.

In May, 1913, by fraud on the court Bevins obtained a divorce from his wife, Mary, in Georgia and returned to Tennessee where he married for the second time Elizabeth. The deed was executed in October, 1913, after he had gone through the second marriage ceremony with Eliza-

beth. In August, 1914, his legal wife, Mary, procured a decree in the Chancery Court of Loudon County, Tennessee, declaring the Georgia divorce decree null because of fraud and she also obtained an absolute divorce from Bevins and was awarded all of his title and interest in the real estate conveyed by deed to Bevins and Elizabeth. In the opinion of Justice Williams the following statement is made: ''Husband and wife, when truly such, are the only persons capable of being tenants by entireties. That estate is not created by a conveyance to a man and a woman who are not under the marital bond, even though they are so described in the instrument. Morris v. McCarty, 158 Mass. 11, 32 N.E. 938; 13 R.C.L., p. 1102, citing Taul v. Campbell, 7 Yerg. (15 Tenn.) 319, 27 Am. Dec. 508. Such grantees would be tenants in common, even though believed by themselves and by the grantor to be husband and wife''

The litigation in McKee v. Bevins was between the first wife, Mary A. Bevins, and the heirs of the second wife, Elizabeth, whom the court held to be not legally married to B. B. Bevins. The court held that Elizabeth held as a tenant in common and was entitled to a one-half interest in the real estate which descended by operation of law to her daughter, the complainant. Mary contended that Elizabeth took an estate by the entirety which vested full fee simple in B. B. Bevins on her death.

The case of McKee v. Bevins was not overruled or differentiated in the subsequent opinion of Alexander v. Shapard. In the Alexander case Justice Williams made reference to the oft-quoted rule that a mere mistake of law, stripped of all other circumstances, constitutes no grounds for the reformation of written contracts, page

97. We copy from the opinion in Alexander v. Shapard as follows:

"Is this such a mistake of law only as that a court of equity will not intervene to make the deed express the real intention of the parties? It is quite true that ignorance of the law furnishes no ground for rescission. Trigg v. Read. 5 Humph. [529,] 533, 42 Am.Dec. 447. If the parties intended to use the words in the sense which they really convey, if the thought to be expressed was the idea the parties intended to convey, then there is no mistake of fact, but one only of legal consequences. Helm v. Wright, 2 Humph. [72,] 75. If the instrument is drawn exactly as it was intended, naturally there can be no relief by way of reformation. Webster v. Stark. 10 Lea [406,] 414. As was said by this court in [Pittsburg] Lumber Co. v. Shell, 136 Tenn. 466, 189 S.W. 879:

" 'Reformation of a written instrument will not be decreed where the instrument accords with the purpose of the parties at the time of its execution; * * * they are not entitled to such relief merely because their intentions were influenced by mistaken considerations. The question always is, What did the parties intend at the time they contracted? not what they would have done if they had been better informed.'

"These are but expressions of a well understood principle of equity. It is stated by Mr. Pomeroy (4 Ed.) sec. 843: 'Where the parties, with knowledge of the facts and with the equitable incidents, have made an agreement or other instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, equity will not allow a rescission or grant reformation, although

one of the parties, and as many cases hold both of the parties, may have mistaken or misconceived its legal meaning, scope and effect.'

"Here we have a case where the language of the deed did not correctly express the intention and agreement of the parties. It was intended that a deed should be executed which would vest in the complainant and his wife an estate by the entirety. It was believed that the language of the deed would have, and it was intended that it should have, that effect. The draftsman of the deed, who was also the grantor, intended to express the real intention and agreement of the parties. The parties accepted the deed and acquiesced in its language with the mistaken belief and understanding that it did express the true intent and agreement, this mistake having been induced by the advice of able counsel. Even able counsel were misled by the fact that the Married Woman's Emancipation Act had not been passed upon by the courts as its effect upon a deed to husband and wife jointly. To say the least of it, at the time of the execution of this deed the question was a mooted one, and the mistake most natural. This was not strictly a mistake of law, but rather one of fact, a mistake occasioned by the parties in the use of words inadequate to convey the real and true meaning, intention, and agreement of the parties. It is such a mistake as equity will correct, and such a one as is recognized by the best authorities and by the courts of this country, including this court.

"Mr. Story, in his work on Equity Jurisprudence (4 Ed.), sec. 205, says:

" 'Where an instrument is drawn and executed which professes or is intended to carry into execution an

agreement whether in writing or by parol, previously entered into, but which by mistake of the draftsman, either as to fact or law, does not fulfill or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement.' "

The facts in the instant case are far different from those in Alexander v. Shapard. In the present case if Jessie Taylor and Pricilla Taylor had told their attorney at the time they bought the property that they were not married but that they wanted to own the property with right of survivorship, their attorney could very easily have so provided in the deed by apt words. McLeroy v. McLeroy, 163 Tenn. 124, 40 S.W.2d 1027. Their lawyer could have created a right of survivorship to the property at any time before the death of Jessie Taylor by appropriate conveyances between Jessie and Pricilla Taylor. Runions v. Runions, 1947, 186 Tenn. 25, 207 S.W.2d 1016, 1 A.L.R.2d 242.

Jessie and Pricilla Taylor misled their attorney by telling him they were married at the time they received the deed to the property. There is no proof in the record that Jessie and Pricilla Taylor ever discussed with each other or their attorney the right of survivorship incident to an estate by the entirety. The record only shows that they intended to own the property as tenants by the entirety. In Alexander v. Shapard both the husband and wife discussed with each other and also their attorneys the question of survivorship and understood from capable counsel that the deed was properly worded so as to give right of survivorship.

If we assume that Jessie and Pricilla Taylor did in fact want to own the property with right of survivorship

they were the authors of their own misfortune in failing to reveal to their attorney the true state of their marital status or the lack of marital status and their desire to own the property with right of survivorship. We concur in the finding of the Chancellor below that there are no facts sufficient to take the present case away from the holding of McKee v. Bevins and bring it within the holding of Alexander v. Shapard. Therefore, assignment of error No. I is respectfully overruled.

■ We find no merit in assignment of error No. II that the original complainants were guilty of laches. The possession of the defendant, Pricilla Taylor, was consistent with her ownership as a tenant in common. There is no proof as to when the complainants first learned that the defendant, Pricilla Taylor, only owned an undivided one-half interest in the property as distinguished from the full interest which she claimed. There is no proof of waiver on the part of complainants nor prejudice to cross-complainants by delay in filing suit.

■ Likewise we find no merit in assignment of error No. III that the court erred in failing to hold that the complainants were estopped because their predecessor in title, Jessie Taylor, from whom they inherited their interest in the property, would have been estopped to deny that he and Pricilla Taylor held the property as tenants by the entirety. We do not concede that Jessie Taylor, if living would be estopped to deny that he owned the property as a tenant by the entirety with the defendant, Pricilla Taylor, since it is admitted that the parties were not in fact man and wife at the time the deed conveyed the property to them. By operation of law they became equal tenants in common in said property and we see no estoppel to be applied against the complainants, judicial

or otherwise. Therefore, assignment of error No. III is respectfully overruled.

Upon the trial below all unknown heirs at law of Jessie Taylor were made parties defendant. The Honorable Phillip L. Brooke, an attorney of the Memphis Bar, was named guardian ad litem to represent such unknown heirs. He filed a general answer neither admitting nor denying the allegations of the bill. He also filed a report under oath setting out the names of the heirs at law of Jessie Taylor who had been located, all of whom were properly represented by other counsel. Upon the trial below the court adjudicated that there were no other unknown heirs of Jessie Taylor except those who were properly before the court by regularly retained counsel.

■ Mr. Brooke appeared before this court upon the argument of the cause and made statement that he represented the unknown heirs of Jessie Taylor but was of opinion that there were no unknown heirs. He also filed a brief on behalf of such unknown heirs in reply to the assignments of error. He made statement in open court that he had not been compensated for his services in the court below and made application to this court for an allowance for guardian ad litem fees. Since the record affirmatively shows that there are no unknown heirs this court did not consider the reply brief filed by the guardian ad litem. The record in its present status does not permit this court to award him a fee for his services in the court below. However, it does appear that the cause must be remanded to the court below for the order of reference, the sale of property and the distribution of funds. It appears that the guardian ad litem is entitled to a fee for his services in the court below as a part of the costs of

the cause for which he may make application to the Chancellor upon remand.

The judgment of the lower court will be affirmed and the cause remanded for further proceedings consistent with this opinion. The costs in this court will be taxed against the appellants.

Avery, P.J. (W.S.) and Bejach, J., concur.