STATE of Missouri, Respondent,

v.

Lincoln Namolokama NAPOLIS, Appellant.

No. 53600.

Supreme Court of Missouri,
Division No. 2.

Feb. 10, 1969.

Bernard W. Weitzman, St. Louis, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, James T. O'Brien, Asst. Atty. Gen., St. Louis, for respondent.

FINCH, Presiding Judge.

Defendant was prosecuted under the Second Offender Act for selling 65 milligrams of Dextro Amphetamine Hydrochloride, a stimulant drug, in violation of § 195.240 (all references are to RSMo 1959, V.A.M.S.). Following conviction by a jury plus a finding of prior convictions by the trial court, defendant was sentenced to imprisonment for six years and he appeals. We affirm.

The evidence introduced by the State, considered in the light most favorable to the verdict, will support the following recital of facts: On April 24, 1967, Donald Ivy, a paid informer, told Willard Rutledge, an agent with the U. S. Bureau of Drug Abuse Control, that defendant was selling amphetamine powder. At about 11:30 p. m. that night Rutledge and Ivy went to the rear of an apartment building located at 3925 N. 21st Street in the City of St. Louis. They stepped up on a porch to knock and an unknown male leaned over an upstairs balcony and asked who they were and what they wanted. The two men identified themselves as Don Ivy and Will and said they wanted to see Chico, a name by which the defendant was known. The man disappeared from the balcony and a moment or so later an unknown woman opened the door and they followed her upstairs to the third floor. There the woman took them into an apartment where they found defendant asleep on a couch. The woman awakened defendant. Ivy then told him that his companion wanted to buy some "splash" and asked if he had any. Defendant replied that he had one bag left. He then removed a cigarette package from a nearby table, removed a tinfoil package from it and handed the latter package to Ivy, who, in turn, handed it to Rutledge. Defendant was asked how much he wanted

for it and he replied $5.00, which amount Rutledge then paid him. Rutledge started to put the tinfoil package in his shirt pocket but defendant told him to put it in his cigarette package instead because then if he was stopped by the police and searched they wouldn't find the package. Ivy and Rutledge then departed after having been in the apartment for some five to ten minutes.

The folded tinfoil package contained a quantity of white powder. Rutledge retained it until he took it on April 26 to the Food and Drug Administration Laboratory at 12th and Market in St. Louis where a chemist analyzed the contents of the tinfoil package. He testified at the trial that it consisted of 65 milligrams of Dextro Amphetamine Hydrochloride.

Defendant was arrested in a restaurant at about 12:05 a. m. on May 10, 1967, on account of the sale on April 24, 1967. Before the arrest was made, another Federal Agent talked to defendant in the restaurant and tried to set up another purchase but was unsuccessful.

After testifying about the facts concerning the purchase from the defendant, Rutledge testified that he had used Don Ivy as an informer on other occasions both before and after the purchase from the defendant and that his personal experience had been that Ivy's information had been reliable. It was developed that Ivy was in the penitentiary at the time of this trial and he was not produced or used as a witness.

The State offered in evidence a certificate from James C. Kirkpatrick, Secretary of the State of Missouri, which contained a list of the stimulant drugs filed in his office on May 2, 1966, by the Division of Health of the Department of Public Health and Welfare of the State of Missouri. It included Dextro Amphetamine Hydrochloride.

Defendant offered no evidence.

■ An examination of § 195.240, the statute under which the defendant was prosecuted, discloses that it provides simply that the possession, sale, distribution, or transfer of any drug designated as a barbiturate or stimulant by the division of health is unlawful, except when such act is by specified persons in the usual course of business or practice, or in the performance of official duties. Knowledge that the drug is a barbiturate or stimulant is not specified as an element of the offense by the language of the statute. Consequently, it was not necessary for the information against defendant to allege knowledge or criminal intent if the State has the right to prohibit such possession, sale, distribution, or transfer of barbiturates and stimulant drugs other than in specified instances.

In State v. Page, Mo., 395 S.W.2d 146, this court considered a similar attack on an information based on § 195.020, which relates to narcotic drugs. That section contains no requirement of knowledge or criminal intent as a part of the crime. In upholding the statute and the information thereunder, this court said, 395 S.W.2d l. c. 149: "We find it difficult to conceive of any offense which so adversely affects public welfare and interest as the wrongful sale of narcotic drugs. This unquestionably justifies a State, in the exercise of its police power, to prohibit all sales thereof, except as specifically authorized, and to place on all persons the responsibility to see that they do not sell narcotic drugs unlawfully." The opinion then holds that the language of § 195.020 disclosed an intention by the legislature to make such sales criminal offenses without requiring proof of knowledge or criminal intent.

■ We hold that the State has the same right, in the exercise of its police power, to prohibit possession, sale, distribution, or transfer of barbiturates and stimulant drugs except as specifically authorized in the statute, and that it is not necessary that the legislature make knowledge or criminal intent an element of the offense.

We find further that the language of § 195.240 indicates a legislative intent not to require such knowledge or criminal intent.

Defendant cites State v. McLarty, Mo., 414 S.W.2d 315, and State v. Darabcsek, Mo., 412 S.W.2d 97, but neither case supports his position with reference to the information herein. McLarty involved the offense of tampering with an automobile. The majority opinion held that criminal intent was an essential element of that offense, but recognized the rule that whether criminal intent or knowledge is an element of a statutory crime depends on whether it is made so by the legislature. Darabcsek involved the possession of amphetamine sulphate pills. It was a prosecution under § 195.240, the section under which defendant herein is prosecuted. Darabcsek raised the point that the State had failed to prove that he knowingly or wilfully had the drug in his possession. Judge Eager's opinion points out, 412 S.W.2d 1. c. 103, that "The statute, Section 195.240, requires no specific intent * * *." He then went on to demonstrate that even assuming that possession of the drug must be with knowledge, the evidence was sufficient in that case to show knowledge on the part of Darabcsek. The case of Pena-Cabanillas v. United States, 9 Cir., 394 F.2d 785, cited by defendant, also recognizes that whether criminal intent or knowledge is made an element of an offense is a question of legislative intent.

■ Defendant's brief asserts also that failure to require proof of knowledge or criminal intent as a part of this offense would be a denial of due process and hence violative of the Fourteenth Amendment to the Constitution of the United States and Art. I, § 10 of the Constitution of Missouri, V.A.M.S. No authority in support of this contention is cited and we find no merit therein. We hold that the enactment of the statute was a valid exercise of the State's police power.

Defendant's second point is that the trial court erred in refusing his Instruction No. A, which would have submitted to the jury the defense of entrapment.

In the recent case of Kibby v. United States, 372 F.2d 598, decided by the United States Court of Appeals for the 8th Circuit in 1967, Judge Floyd Gibson reviewed various cases dealing with the defense of entrapment and whether the issue is one of fact or law. The opinion points out that under the majority opinions of the Supreme Court of the United States in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, the question of entrapment is a factual issue for the jury unless it can be decided in the particular case as a matter of law. In Kibby, which was a court-tried case, Judge Gibson held that the only evidence relating to the issue of entrapment consisted of a telephone call from a paid informer Brown asking to buy narcotics. In holding that this, as a matter of law, was not sufficient to warrant a consideration of the issue of entrapment, the court said, 372 F.2d 1. c. 602: "Probably the Trial Judge was of the opinion that there was no entrapment, as no evidence was pointed out to him as constituting entrapment by defendants' counsel except the bare 'phone call by Brown asking to buy narcotics. This evidence is insufficient to warrant consideration of, or if tried by a jury, submission of, the issue of entrapment."

In State v. Taylor, Mo., 375 S.W.2d 58, this court recognized a rule, similar to that announced in Kibby, that the defense of entrapment should be submitted to the jury under proper instructions unless, under the evidence, it can be said, as a matter of law, that there was no entrapment. In Taylor the defendant testified and the evidence was extensive that over a period of months the agent had solicited and pursued defendant, seeking to persuade him to sell or obtain narcotics for the agent. With respect to the evidence, the court's opinion said, 375 S.W.2d 1. c. 61: "From the evidence of entrapment favorable to defendant the jury could have found that the narcotics agent

did not have reasonable cause to suspect that defendant was an actual or potential violator of the narcotics laws; that defendant did not have a predisposition or criminal intent to violate these laws; that Snokhaus' actions were not those of an enforcement officer merely offering to one who was willing and waiting and already engaged in the illicit traffic, an opportunity to commit an offense. The jury had a right to find that the government agent initiated the idea of purchasing the narcotics; that the crime was the 'product of the creative activity' of Snokhaus, that the intention to commit this crime did not originate in the mind of defendant but was planted there by the agent, who, through misrepresentation and deceit, imposition, persistent and repeated solicitation, inducement and promises of money consideration to one in reduced financial circumstances, finally engineered defendant's participation in criminal activity which but for the pressures applied would never have been undertaken by him." Clearly, the factual situation in Taylor made the issue of entrapment one for the jury.

In this case the only evidence which possibly could pertain to the issue of entrapment was that the agent Rutledge and the informer Ivy went to an apartment building where they asked to see Chico, the defendant, and when they saw him merely told him that Ivy's companion wanted to buy some "splash". This evidence is comparable to the evidence of the telephone call in Kibby and is insufficient to warrant consideration of the issue of entrapment or to justify an instruction to the jury on that issue. See also State v. Rice, Mo., 419 S.W. 2d 30, and Kansas City v. Plumb, Mo.App. 419 S.W.2d 457.

Finally, defendant asserts that his rights were violated (a) by failure of the State to obtain fingerprints from the package purportedly sold by defendant, and (b) by failing to call as witnesses Donald Ivy, the informer, and agent Elliott, who had sought to make a purchase from defendant shortly before his arrest. Defendant claims that the failure by the State to do these things offended a sense of justice and resulted in an unfair trial and a denial of defendant's constitutional rights. As a result, he would have us grant him relief under Supreme Court Rule 27.20(c), V.A.M.R., which provides for relief by the court for plain error when manifest injustice or miscarriage of justice has resulted.

In the first place, there was no obligation on the State to take fingerprints from the tinfoil package. The State offered direct evidence by agent Rutledge that the defendant handed over the tinfoil package in his apartment. Failure of the State to take fingerprints from the package did not violate any constitutional rights of the defendant.

With reference to the failure to use Ivy and Elliott as witnesses, defendant's brief merely says that "a sense of justice would require putting these two men on the stand to accommodate this indigent defendant". With respect to Ivy, the brief goes on to say that he "could have been asked, among other things, the source of his information and his relationship, if any, to the defendant". As to Elliott, the brief says that he "obviously would have had to admit that he was unsuccessful in attempting 'the buy,' a fact which certainly would have influence with the jury". In effect, defendant is saying that he could have cross-examined these witnesses effectively and thereby helped himself.

Missouri does not have a rule that the State is obligated in a criminal cause to call as a witness every person who knows anything about the charge against defendant. State v. Eaton, Mo., 302 S.W.2d 866 [8]. Our rule is subject to the qualification that the State may not suppress evidence vital to the defense or convey incorrect or misleading information to a defendant. State v. Eaton, supra; State v. Thompson, Mo., 396 S.W.2d 697. Defendant's brief makes no assertion of any improper suppression of evidence by the State. Under

the claims made in defendant's brief and under the evidence, there is no basis whatsoever for holding that the failure of the State to call Ivy and Elliott as witnesses violated fundamental rights of the defendant. It did not constitute a violation of defendant's right to be confronted by the witnesses against him, as he suggests.

An examination of the record as required by Supreme Court Rule 28.02, V.A.M.R., reveals no error.

The judgment is affirmed.

All of the Judges concur.