Joseph **WARREN**, Jr., **Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 55494.

Supreme Court of Missouri,
En Banc.

July 17, 1972.

Fortis M. Lawder, Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, for appellant, Joseph Warren, Jr.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal from denial, after evidentiary hearing, of motion under Criminal Rule 27.26, V.A.M.R., to vacate and set aside judgment of conviction of forcible rape.

Joseph Warren, Jr., with two prior convictions for burglary, second degree, and convictions for larceny from the person and robbery, first degree, by means of a dangerous and deadly weapon, was indicted for the forcible rape of Mary Tate. He went to trial before a jury February 13, 1962. The state's evidence showed that defendant forced his way into Mary Tate's apartment about noon September 15, 1961; that he "tusseled" with her throughout the apartment; that he held her by the throat while attempting to remove her clothing; that she freed herself and ran into her kitchen; that defendant pursued her, struck and knocked her to the floor, put a butcher knife to her neck, threatened to

kill her if she did not submit and, by such means, accomplished an act of intercourse. The victim called the police, who arrived around 12:30 p. m., found her screaming, and took her to the hospital. The hospital found her neck to be sore and that she had a pelvic superficial laceration about ½ cm to the left of her vaginal opening. Defendant admitted the act of intercourse but defended on the theory that prosecutrix consented to the intercourse and that it occurred in midmorning after which both parties washed themselves, thus to account for the lack of any evidence to show spermatozoa present. The jury resolved the issues against defendant; the court, Judge Mayfield, sentenced defendant to forty-five years' imprisonment, and the verdict, judgment, and sentence were affirmed. State v. Warren, Mo., 366 S.W.2d 311. See also State v. Warren, Mo., 406 S.W.2d 605, affirming denial of relief on two prior motions under Rule 27.26.

In this collateral attack on his conviction, movant asserted, as grounds for relief: (1) that the prosecutor failed to reveal contents of a "newly discovered" laboratory report and was thus guilty of suppression of evidence, and that the failure of the trial court to permit inspection of police reports as requested by counsel denied defendant a fair trial; and (2) that he was represented at trial by incompetent counsel.

Appellant now contends there was a suppression of evidence and denial of a fair trial in the alleged failure of the state to produce a purported laboratory report and in the alleged failure of the court to permit inspection of police reports as requested by counsel; and that the court erred in concluding defendant was represented by competent counsel.

■ Although characterized by appellant as a "sterile approach," nevertheless this review is "limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." Criminal Rule 27.26(j), V.A.M. R.

In support of his allegations of newly discovered evidence and suppressed evidence, movant had a document marked for identification as "Movant's Exhibit 1, 6-10-69, ERG," which, according to movant, "is a medical report which I have an attorney to purchase from the police department and sent to me in prison and they don't have any record of it in the transcript." The state's objection to admission of the document on grounds "there's been no attempt to verify it, its accuracy, to establish what it really is," was sustained. Movant stated further that no one attempted to introduce the exhibit at trial, nor did his attorney attempt to obtain a copy of it.[1]

With respect to trial counsel's alleged incompetency, movant testified, "the counselor at one time did object to the hearsay evidence which was the Judge himself going out of the courtroom to obtain evidence to—he proposed to talk to some doctor out of the courtroom and * * * come back in and tell what the doctor said to him. Now, he objected to this but it was all true. * * * No one in the courtroom could understand that report so the Judge asked the prosecuting attorney to go out of the courtroom and said he talked to some doctor and the doctor told him this and the other and he read it into the record." He felt all the state's evidence was hearsay "because there wasn't anyone present but she and I," and his attorney never objected to use of hearsay. He conceded that his attorney did object to

---

1. The document, filed in this court, is a carbon copy on onionskin-type paper and purports to be a laboratory report bearing the name of the St. Louis Police Department. The report purports to convey results of a laboratory examination of clothing said to be the property of Mary Tate. However, appellant emphasizes the purported hearsay recital, "a vaginal smear was taken at Homer Phillips by Dr. M. R. Banton and no spermatozoa was found." Dr. Banton, although endorsed as a witness, was called by neither the state nor the defendant.

admission of the medical report and the judge overruled him. He referred also to a matter upon which witness James Jackson testified. He conceded that counsel obtained "changed" answers from the witness on cross-examination, and seems to say had this been known to the police, "then there would never be a warrant issued * * *." He charged also that his attorney "should have investigated the case and got those records from the police department because it was in my favor." His final complaint was with counsel's decision to disclose defendant's prior convictions on his cross-examination. He admitted that the matter was discussed and that counsel ·stated his reasons; however, he could not recall counsel's reasons.

Hugh J. White testified in response to the motion. He was retained by Joseph Warren, Jr., to defend him on the rape charge. " * * * after consultation with my client, I followed each of the leads which he gave me. I made personal trips to the place of employment of the State's chief witness and did all things that I could in preparation of the case before it came to trial." He talked to his client prior to trial "at least a half dozen times." He cross-examined the state's witnesses,[2] and he was "inclined to doubt" the asserted failure to object to hearsay statements. He objected to admission of the "medical card." With respect to the problem of defendant's testifying, he "had previously talked to the Defendant * * *, and I suggested to him that it would be probably better in the eyes of the jury if I as his counsel brought out his prior record· * * * I was certain the State would bring it up and I proceeded with that in mind. * * * We had no disagreement about that and his taking the stand * * *." Defendant made no complaints of counsel's handling of the case during

course of the trial. Upon cross-examination counsel reiterated his investigation of all leads given him by defendant "or from any other source. * * * The usual sources would be to review the police record, if you could get your hands on it,[3] to review any statements, if you could get to them, that may have been attributed to the Defendant, talk to him, talk to others who might know him, as fully investigate the case as you can before your trial. That's what I did." He believed he saw the police report, and "would have talked to anyone I thought of, after discussing with the Defendant, might have been of benefit to him. * * * I tried to find a couple of those people to get in. I wasn't able to get any of them to come in."

It may not be said on the foregoing record that the court's denial of relief was "clearly erroneous."

■■ With respect to the alleged suppression of evidence, the document with which movant would support his allegation is so patently without identification that the trial court properly ruled it to be of no probative force. There is no evidence from the attorney who "purchased" the document from the police, if such be the fact; the emphasized recital is inadmissible hearsay, and the purported author of such statement was made known to the defense by endorsement. Such circumstances do not show the suppression of evidence in denial of a fair trial envisioned by appellant's authorities, e. g., Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; State v. Thompson, Mo., 396 S.W.2d 697; State v. Reynolds, Mo., 422 S.W.2d 278; State v. Napolis, Mo., 436 S.W.2d 645.

■ On the asserted failure of the court to permit defense inspection of the police records, note that trial counsel stated his

---

2. The trial transcript shows that counsel cross-examined vigorously and in detail, and the questioning demonstrates a sound grasp of the prosecution and defense theories of the case.

3. The trial transcript shows that counsel, throughout trial, sought to inspect police records, and that the court did permit him to inspect the police records, reports, etc., concerning the victim, Mary Tate.

belief that he saw the record and acted accordingly.

■ On the asserted incompetency of counsel, note the conflict with respect to the wisdom of counsel's actions depending on whether the movant or the lawyer is believed. Movant's assertions are general and are refuted if counsel's testimony is accepted. The court properly could resolve the conflict against movant on this record. See State v. Wilkinson, Mo., 423 S.W.2d 693.

Judgment affirmed.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court en Banc.

FINCH, C. J., DONNELLY, HOLMAN, BARDGETT and HENLEY, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

MORGAN, J., dissents and concurs in separate dissenting opinion of SEILER, J.

SEILER, Judge (dissenting).

One of the grounds asserted by defendant in his pro se 27.26 motion was "Movant discovered new evidence . . . deliberate suppression of evidence favorable to Defendant."

There was no finding of fact or conclusion of law made by the trial court as to this ground as required by Rule 27.26(i) and our decisions, State v. Brown (Mo. Sup.), 436 S.W.2d 724; Thomas v. State (Mo.Sup.), 465 S.W.2d 513. This deficiency prevents the type of review prescribed by Rule 27.26 and requires at least a remand.

A brief statement of defendant's side of the evidence in the original trial is necessary to bring the issue into focus. Defendant's defense to the charge of rape was consent. He presented evidence at the original trial that he had become acquainted with the prosecutrix, who was twenty-two years of age, married, but living apart from her husband, by "picking her up" on a street corner in St. Louis. She voluntarily entered his automobile, although she had never seen him before, and permitted him to take her to her apartment and let him help her get in the apartment, having locked herself out. Prosecutrix admitted all this. She also admitted he said he would like to know her better, asked her if she ever went out, and that she did not tell him he should not expect to see her again.

Defendant's evidence was that he returned to her apartment several times, all with her consent. One of the prosecutrix's downstairs neighbors testified prosecutrix introduced defendant to her on the day he helped open the apartment and a few days later she saw prosecutrix admit defendant to the apartment. Another witness testified prosecutrix met defendant and the witness one evening for a drink at a "transit house" where, according to defendant, defendant and prosecutrix also had intercourse in a rented room in the basement. At that time, prosecutrix asked him for $25 so she could "get her phone back on" at her apartment. He promised to give it to her later if she would submit.

As to the occasion of the alleged rape, defendant testified an act of voluntary intercourse occurred in the apartment bedroom between 9:30 and 10:30 a. m., and "after that was over, we went to the bathroom and got ourselves cleaned up." Later in the morning the prosecutrix committed a sodomonitical act on defendant. He refused to respond in kind, and she became angry and upset. The subject of the promised $25 came up. Defendant gave her $10 and then left the apartment. He said he departed about 11:30 or 11:45 a. m.

At the 27.26 hearing, defendant produced a carbon copy of what purported to be a St. Louis police laboratory report. He testified he had a lawyer get it for him from the police department and send it to him in prison. It bore the name of the prosecutrix; also had a laboratory number (28269), the name of the examiner (Mc-

Knight, 3048), referred to two specimens (panties and pajamas of the prosecutrix), and contained this statement: "A vaginal smear was taken at Homer Phillips by Dr. M. R. Banton and no Spermato*za* were found." Defendant was endeavoring to show that when the prosecutrix was examined at Homer G. Phillips Hospital a vaginal smear was taken and no spermatozoa were found. This statement supported his story that the intercourse had occurred around 10:30 a. m., following which prosecutrix had cleansed herself, so that it was to be expected that no sperm would be found on the vaginal smear, whereas had events occurred as prosecutrix claimed there should have been sperm present in the vaginal smear, because her testimony was that defendant arrived at her apartment about noon and that the forcible intercourse occurred soon thereafter; that immediately after defendant's departure, she put on some clothing, went to another apartment and called police. They arrived in a few minutes and she was taken straight to the hospital.

On objection of the state at the 27.26 hearing, this exhibit was excluded as not properly identified. Defendant's appointed counsel made no offer of proof or statement as to what had been done to locate the original document. Dr. Banton was not called as a witness by either side.

In the original trial Dr. Banton was listed as a witness for the state, but the prosecutor said, ". . . I'm not going to have the doctor in, and I purposely excluded certain testimony because—," at which point the court interrupted him. Later, however, the prosecutor put into evidence, over defendant's objection, a hospital "D and S" card on prosecutrix, signed by Dr. Banton, which contained, among other entries on her physical examination, the following: ". . . marital intriotus, vaginal vault of about 5 plus ccs of whitish muco serous." The record of the original trial shows counsel tried to obtain access to the police report, but this was denied by the court on the ground that police reports are not admissible. There are some 15 pages of colloquy and argument by counsel trying to get the report, to no avail. Trial counsel also subpoenaed the police records on Mary Tate (he had been trying to show various specific acts of misconduct committed by her, arrests, and fights) and the court did permit him to inspect her police record.

The trial court did not make findings of fact or conclusions of law on the assertion that "Movant discovered new evidence . . . deliberate suppression of evidence favorable to Defendant." The "new evidence" and the evidence allegedly suppressed refer to the police laboratory report and what it would lead to. The 27.26 motion to vacate the judgment is not a request for a new trial based upon a claim of newly discovered evidence, but a constitutional claim that evidence had been suppressed at the original trial and an explanation that the evidence concerning the denial of due process was discovered subsequently to the original trial. The 27.26 motion must be decided upon a consideration of the constitutional claim.

The responsibility of a court in evaluation of a motion for a new trial on the grounds of newly discovered evidence or in a 27.26 motion to vacate judgment because of the suppression of evidence, to some degree, is similar. In each case, the court must consider the impact the evidence would have upon the jury. In the first situation, the court will, assuming the other criteria are met, State v. McLaughlin, 27 Mo. 111, 112, grant a new trial if the newly discovered evidence "would have a tendency to shape the verdict of the jury in a new trial", State v. Bailey, 94 Mo. 311, 7 S.W. 425, 427; State v. Jennings, 326 Mo. 1085, 34 S.W.2d 50. In the second situation, the court, upon a finding that evidence has been suppressed, must determine if the evidence is ". . . favorable to defendant and which might be persuasive to a jury . . .", State v. Thompson, (Mo.Sup., banc) 396 S.W.2d 697, 700, following Brady v. Maryland, 373

U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. In this case, the evidence that no sperm were found in the vaginal tract of the prosecutrix would meet either standard.

As the record now stands, there is no finding on the issue as to whether there actually was a laboratory report showing no sperm in the vaginal tract and whether the state knew this and instead of calling Dr. Banton as a witness, put the "D and S" card in evidence with its reference to "5 plus ccs of whitish muco serous", which the jury might take to mean that semen was found in the vaginal tract.

Therefore, I respectfully dissent. I would withhold our decision and send this case back to the trial court for a further evidentiary hearing for a complete airing of the laboratory report, if it does exist; whether it was a part of the police file; what the state knew and did about it, and what Dr. Banton will say about it, to be followed by specific findings of fact and conclusion of law on the issue, together with whatever modifications, if any, as should be made in the judgment in light thereof, and for return to this court together with the supplemental transcript, for review as prescribed by Rule 27.26.